545 P.2d 54

Mary Jane STILES, widow, Robert J. Stiles, Deceased, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

J. J. Stiles, Respondent Employer, Mission Insurance Company, Respondent Carrier.

No. 1 CA–IC 1265.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 22, 1976.

**544**

Jerome & Gibson, by D. A. Jerome, Phoenix, for petitioner.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Jones, Teilborg, Sanders, Haga & Parks, by William R. Jones, Jr., Joseph L. Moore, Phoenix, for respondent employer and respondent carrier.

## OPINION

SCHROEDER, Judge.

This is a case which, like *Mission Insurance Co. v. Jones,* 25 Ariz.App. ——, 545 P.2d 52, also decided this day, involves the agricultural-worker exemption to our workmen's compensation law prior to its amendment in 1973 removing the exemption.[1] This case arises out of a fatal accident which occurred at a dairy in October of 1972. The decedent, Robert J. Stiles, was employed in, May of 1972 as manager of Stiles Dairy. He was killed on October 14, 1972, when, while attempting to remove a cow from a corral, he was gored by a bull.·

Petitioner timely filed for death benefits under a policy of workmen's compensation issued the dairy by the respondent carrier, Mission Insurance Company. Upon hearing of the matter before the Industrial Commission, the Commission issued its award denying benefits on the ground that, at the time of the accident, the decedent was not engaged in the use of machinery. Upon the hearing officer's denial of her request for review, Mrs. Stiles seeks review in this Court.

■ It is clear that, at the time of his death, Mr. Stiles was not in any way engaged in the use of machinery. Petitioner contends, however, that because his overall duties included the use of some machinery, benefits should be allowed. We must reject petitioner's contention in this regard, for as discussed in *Mission Insurance Co. v. Jones, supra,* our Supreme Court in *Hight v. The Industrial Commission of Arizona,* 44 Ariz. 129, 34 P.2d 404 (1934), has expressly held that an employee not engaged in the use of machinery at the time of an accident is not covered by our law.[2]

■ Petitioner also urges in her brief that a bull should be considered to be a machine within the meaning of our statute. We can find no support for such an interpretation either in the language of the statute or in any authorities cited to us.

■ Petitioner's other principal argument is that even if Mr. Stiles was not engaged in the use of machinery at the time

---

1. A.R.S. § 23–902 at all times material herein provided in pertinent part that employers subject to our workmen's compensation law were "every person who has in his employ three or more workmen or operatives regularly employed in the same business or establishment under contract of hire, *except agricultural workers not employed in the use of machinery* . . . ." (Emphasis supplied).

2. The obvious effect of the time-of-the-accident rule is that an employee is covered in *some* activities but *not* in others. Such a result has been criticized on the ground that the overall nature of the duties should govern and that a workman should not "dart in

and out of coverage" depending on what he is doing at any given moment. *See* 1A *Larson, Workmen's Compensation Law,* § 53.40. However, the holding of our Supreme Court is controlling, and in *Hight,* the Court stated: "[I]f one is employed as a general agricultural worker, that is, to do the tasks one hired as an agricultural or farm-hand is called upon to perform, and in the discharge of these duties it becomes necessary for him at times to use machinery and at others not to use it, he is entitled in the former but not in the latter instance to the protection the Compensation Law gives." 44 Ariz. at 133, 34 P.2d at 405.

of his accident, the establishment for which he worked was so highly mechanized, and his duties so removed from those of an ordinary farmhand, that he should not be considered "an agricultural worker" within the meaning of the statute. In this regard, the nature of Mr. Stiles' duties is primarily a question of fact which was fully considered by the hearing officer. His duties, as found by the hearing officer, included the following:

> "[M]anaging the dairy; making decisions pertaining thereto; hiring, firing and overseeing labor; buying and selling cattle; culling cows; breeding, feeding and calving; keeping breeding and drying records; doing nonprofessional veterinarian chores; loading and transporting cattle for sale; buying feed, hay and grain; checking the quality of hay and grain; purchasing supplies; building sheds; repairing milking machines, refrigeration, well, pump, water lines and water troughs; cleaning and grading corrals; and at times milking as a relief man on days when the regular milker did not work; he was provided a pickup truck to drive while working; the only items of agricultural machinery that he drove were a loader and a small tractor."

The hearing officer made a further express finding that the decedent's duties were primarily agricultural. We perceive no basis for overturning that finding.

It is true that dairies, as well as all agricultural operations, have become highly mechanized and the duties of employees more professional since the original passage of this statute in 1925. Such historical change undoubtedly accounts in large part for the eventual amendment of the statute to bring all agricultural workers within its coverage. But we deal here with the statute as it existed prior to the amendment and which still exempted agricultural workers unless engaged in the use of machinery at the time of the injury. We, therefore, must affirm the award of the Commission.

Respondent also urges additional grounds which, in respondent's view, would independently support the award of the Commission. While the Commission's award did not rest upon either ground, they are asserted as alternative bases for reaching the same result. Respondent does not ask any affirmative relief beyond that awarded by the Commission. These matters are, therefore, properly before us for consideration, and there is no requirement that the respondent cross petition for certiorari in order to bring them here. *Neitman v. The Industrial Commission of Arizona*, 20 Ariz.App. 53, 510 P.2d 52 (1973); *Santanello v. Cooper*, 106 Ariz. 262, 475 P.2d 246 (1970).

The first such alternative ground is that the workmen's compensation policy issued by the carrier and under which compensation is sought by petitioner did not provide coverage for this employer in view of an alleged failure properly to notify the carrier of a change in the status of the insured entity. The underlying facts are that on January 1, 1971, the insurance policy was originally issued through Fulmer Chapman to an entity known as "J. J. Stiles." During the summer of 1972, the Stiles Dairy was incorporated. Fulmer Chapman was told of the change in entity. The testimony at the hearing reflected, and the hearing officer found, that Mr. Chapman advised that the incorporation be noted on the next annual premium report; such a notation was in fact made. The report, however, was not submitted until a few days after the decedent's death.

Respondent carrier argues that there was a failure to notify the carrier of the change in status, and that absent such a notification, the policy did not afford coverage to the corporate entity. Respondent relies on *Dunwoody v. The Industrial Commission of Arizona*, 22 Ariz.App. 63, 523 P.2d 114 (1974), which held that notice to the carrier was required in order to transfer an insurance policy from a sole proprietorship to a corporate entity. In *Dunwoody*, unlike this case, there was no

notice ever given to anyone acting on behalf of the insurance carrier. Here, notice was indisputably given Mr. Chapman. The question, therefore, becomes whether the notice to Mr. Chapman was sufficient.

The carrier's position in this regard is that Mr. Chapman was the "agent" of another insurance company and was paid by this carrier only on a commission basis through an intermediary company. The carrier, therefore, argues that the notice to Mr. Chapman was not sufficient to bind this carrier. The hearing officer found that Stiles had the right to rely on the statements of Fulmer Chapman, since he was in fact the recognized agent of Mission Insurance for the purpose of writing policies. The findings also cited A.R.S. § 20–282(A).[3]

■ The record here supports the hearing officer's finding that Mr. Chapman acted as an "agent" of the carrier by writing policies on its behalf. In addition, even after the home office of the company had actual notice of the change in status, as the hearing officer further found, the policy in question was never cancelled nor was a new policy ever issued to reflect the change in entity. Neither the facts asserted in respondent's brief nor reflected in evidence in this record are sufficient to compel us to reject the hearing officer's conclusion that the intent to cover the risk was clear. We, therefore, are unable to hold that any failure of notice of change of entity status barred coverage under the particular circumstances of this case.

As its second alternative ground for sustaining the award, the carrier argues that, even if the insurance remained in effect as to the corporation, there was no coverage under this policy because the corporation had fewer than three employees at all material times.

■ A.R.S. § 23–902(A), as quoted in footnote 1, provided that employers subject to the Act were those who had three or more employees regularly employed. For several months before and after this accident, the dairy had fewer than three employees on its payroll. However, petitioner correctly points out that while the dairy may not have been required to afford compensation to fewer than three employees, it could voluntarily do so. The same section of our statute went on to provide:

"Exempted employers of agricultural workers or domestic servants or employers of less than three workmen or operatives may come under the provisions of this chapter by complying with its provisions and the rules and regulations of the commission."

The question then becomes whether this policy was intended to provide coverage regardless of the number of employees or whether it was intended to be ineffective if the dairy had fewer than three employees. As to this issue, the hearing officer made no findings. The briefs do not direct our attention to any provisions of the policy bearing on the matter. In oral argument, counsel for respondent carrier alluded to another, "voluntary," policy issued by this carrier to the dairy which was apparently intended to cover accidents not covered under this policy. The record reflects that petitioner did receive $10,000 under another policy, but the second policy itself is not in this record. It may well be that the instant policy, particularly when read in conjunction with the second "voluntary" policy, was intended to exclude coverage when there were fewer than three employees. But on the basis of this record, we cannot so decide the question.

Accordingly, we are unable to hold that the award of the Commission denying benefits is supported independently either by timely failure to notify of the change in entity or by the employment of fewer than three employees. Nevertheless, the award

---

3. A.R.S. § 20–282(A) defines an insurance "agent" as a person "appointed by an insurer to solicit applications for insurance . . . or to negotiate insurance on its behalf . . . ."

denying benefits was based upon the finding, fully supported, that at the time of the accident the employee was not engaged in the use of machinery. Since under our law as it existed prior to the 1973 amendment, and as interpreted by our Supreme Court, an accident to be compensable must occur while the employee is engaged in the use of machinery, the award is affirmed.

NELSON, P. J., and WREN, J., concurring.