785 P.2d 80

**CIRCLE K STORE # 1131,**
**Petitioner Employer,**

**GAB Business Services, Inc.,**
**Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION of**
**Arizona, Respondent,**

**Pauline L. Shoemaker,**
**Respondent Employee.**

**No. 1 CA–IC 88–129.**

Court of Appeals of Arizona,
Division 1, Department C.

Oct. 10, 1989.
Review Granted Jan. 23, 1990.

Long & Lester by Steven C. Lester, Phoenix, for petitioner employer, and petitioner carrier.

Catherine A. Fuller, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Sherman R. Bendalin, Phoenix, for respondent employee.

## OPINION

BROOKS, Judge.

This is a special action review of an Industrial Commission award for a compensable claim. The several issues presented may be considered as one: whether the respondent employee (claimant) met her burden of proving that her injuries arose out of her employment with the self-insured petitioner-employer, Circle K Store # 1131 (Circle K). We conclude that she did not and, accordingly, set aside the award.

Claimant was employed by Circle K on January 14, 1988, when she sustained injuries as the result of a fall. She filed a workers' compensation claim, which was denied for benefits, and she timely requested a hearing. Claimant testified at the hearing as did Circle K's investigator and zone manager. The parties stipulated that no medical testimony was needed to establish that the fall had caused claimant's injuries. Two matters were disputed at the hearing: (1) whether claimant's injury had occurred in the course of her employment (the dispute focused upon whether claimant had fallen on or off Circle K's premises); and (2) whether claimant's injuries had arisen out of her employment.

The following facts are revealed when the evidence is viewed in a light most favorable to sustaining the award. *See, e.g., Pena v. Industrial Comm'n*, 140 Ariz. 510, 683 P.2d 309 (App.1984). On the date of the injury, claimant worked the swing shift—from 3:00 p.m. to 11:00 p.m. Her duties included carrying out the trash from her shift. She was working alone and had to wait for the arrival of the next shift's employee, Enedina Tarango, before taking the trash out to the garbage dumpster.

When Ms. Tarango arrived, claimant prepared to leave. Because she walked to and from work, and because she would pass the dumpster on her way home, she took the bags of trash with her when she left the store. She was also carrying her purse and a bag of groceries that she had purchased. When she reached the dumpster, she lifted the lid and put her things down on the ground so that she could dispose of the garbage. Her task complete, she turned around to pick up her purse and her groceries and, in so doing, turned her ankle and fell within a few feet of the dumpster. No one witnessed claimant's fall. She suffered a broken nose, a broken finger, and scrapes and bruises on her face, arms, and right ankle.

At the hearing, claimant testified upon cross-examination that she had worn nursing shoes with low, wedge-shaped heels to work because she found them to be comfortable and because they were of a type preferred at Circle K. She denied having any trouble with her feet; she was not asked about any other disease or infirmity. She maintained that she had not been aware of tripping or slipping on anything. She stated that she had fallen after turning or twisting her ankle, but could identify nothing in particular that might have caused her to do so.

After the hearing, the administrative law judge entered an award for a compensable claim, finding that claimant had established, by a reasonable preponderance, that she had sustained a personal injury arising out of and in the course of her employment. He considered the two challenges to compensability offered by Circle K. He rejected the first—that claimant's fall had taken place off Circle K's premises—finding that she had been in an area where she might reasonably be expected to be in connection with her employer's work. With respect to the second—that claimant's injury did not arise out of her employment—he found (a) that no showing had been made that claimant's fall was idiopathic in origin; (b) that the origin of the fall was instead unexplained; and (c) that claimant was not required to offer a precise explanation as to why the fall had occurred. The award was affirmed upon administrative review, and this special action followed.

## DISCUSSION

■ For an industrial injury to be compensable, it must arise out of and occur in the course of employment. A.R.S. § 23-1021(A). "Arising out of" refers to

the origin or cause of the injury; "in the course of" refers to the time, place, and circumstances of the accident in relation to the employment. *E.g., Peter Kiewit Sons' Co. v. Industrial Comm'n,* 88 Ariz. 164, 354 P.2d 28 (1960). These are separate tests, and both must be satisfied. *Peetz v. Industrial Comm'n,* 124 Ariz. 324, 604 P.2d 255 (1979).

■ Furthermore, it is the claimant's burden to prove the elements of compensability. *E.g., Toto v. Industrial Comm'n,* 144 Ariz. 508, 698 P.2d 753 (App.1985). It is not the employer's burden to disprove them. *Lawler v. Industrial Comm'n,* 24 Ariz.App. 282, 537 P.2d 1340 (1975).

On review, Circle K contends that the evidence does not reasonably support a finding that claimant's injuries arose out of her employment. More specifically, although Circle K agrees that claimant's fall was unexplained, it argues that the administrative law judge erred in relying upon that fact to relieve claimant of her burden to provide affirmative proof of the "arising" element of her claim and in shifting that burden to Circle K by requiring it to prove, instead, that the fall was idiopathic.[1] In essence, Circle K takes issue with the administrative law judge's apparent adoption of the following statement as a proposition of law: An unexplained fall that occurs within the course of employment is presumed also to arise out of the employment.

Unfortunately, claimant has failed to address the arguments raised in Circle K's opening brief, to distinguish the authorities cited therein, or to offer any legal argument to support the administrative law judge's treatment of the "arising" element of her claim. Instead, her arguments focus exclusively upon a matter that is no longer in dispute—whether her injuries occurred *within the course of her employment.* Claimant's counsel must certainly have recognized that this was not the issue

on review; in his conclusion, he simply asserts that the administrative law judge properly shifted to the employer the burden of proof regarding *causation.* We find this assertion to be unsupported by Arizona law.

■ The "arising out of employment" element of a workers' compensation claim is established if the injury resulted from some risk of the employment or incidental to the discharge of the duties thereof. *Royall v. Industrial Comm'n,* 106 Ariz. 346, 476 P.2d 156 (1970). In contrast, an injury resulting from a risk that is personal to the claimant does not arise out of employment unless the employment contributes to the risk or aggravates the injury. 1 A. Larson, *supra* note 1, § 12.00, at 3–308 (1989); *See also Valerio v. Industrial Comm'n,* 85 Ariz. 189, 334 P.2d 768 (1959); *Estate of Sims v. Industrial Comm'n,* 138 Ariz. 112, 673 P.2d 310 (App.1983).

There exists a third type of risk, however, for which the outcome is less certain. In *Royall,* our supreme court observed:

As to the "causation" test, the type of accident which most clearly satisfies its requirements is one in which the source of the injury is distinctly associated with the employment, such as machinery breaking, objects falling, dynamite exploding, etc. The weakest type, on the other hand, exists where the source of injury or the cause of death relates to risks personal to the claimant which are in no way work-connected, such as a heart attack entirely attributable to a preexisting heart condition or a death from natural causes. *In between these two types—the strongest and the weakest—fall those cases where the source of the injury is neither distinctly associated with the employment nor personal to the claimant, such as being hit by a stray bullet or being struck by lightning.* Which of the situations falling

---

1. There is some confusion in the briefs regarding the distinction between an "idiopathic" and an "unexplained" fall. An idiopathic fall arises from some condition personal to the claimant, such as a preexisting physical weakness or disease. *See* 1 A. Larson, *The Law of Workmen's*

*Compensation* § 12.00, at 3–308 (1989). In contrast, an unexplained fall arises from an unknown cause or from a cause that can be attributed neither to the claimant personally nor to the employment. *Id.,* § 10.31, at 3–87.

within this middle category are considered to meet the "arising" test and which are not must of course be determined on a case-by-case basis, keeping in mind the purposes and intent of the Workmen's Compensation Act in the particular jurisdiction.

106 Ariz. at 350, 476 P.2d at 160 (emphasis added).

Professor Larson notes a growing trend among jurisdictions to award compensation for injuries resulting from this third category of risks, termed "neutral" risks. *See* 1 A. Larson, *supra* note 1, § 7.00, at 3–12. In many jurisdictions, the "arising" element in such cases is established through the application of what is known as the "positional-risk doctrine": An injury arises out of the employment if it would not have occurred *but for* the fact that the conditions or obligations of the employment put the claimant in the position where he was injured. *Id.*, § 6.50, at 3–6.

Within the category of neutral risks, Larson includes two types of cases: (1) those in which the nature of the cause of harm is known and may be associated neither with the employment nor with the employee personally (*e.g.*, stray bullets and lightning); and (2) those in which the cause itself, or the character of that cause, is simply unknown. *Id.*, § 7.30, at 3–13.

> The commonest example of the latter is the unexplained fall in the course of employment. If an employee falls while walking down the sidewalk or across a level factory floor for no discoverable reason, the injury resembles that from stray bullets and other positional risks in this respect: The particular injury would not have happened if the employee had not been engaged upon an employment errand at the time. *In a pure unexplained-fall case, there is no way in which an award can be justified as a matter of causation theory except by a recognition that this but-for reasoning satisfies the "arising" requirement.*

*Id.*, § 10.31, at 3–87 (emphasis added).

We have found no authority that would support the adoption of such a test in Arizona. Courts of this state have recognized such a presumption only in cases of unexplained *death*.

> When an employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, in the absence of any evidence of what caused the death, most courts will indulge a presumption or inference that the death arose out of the employment.

*Id.*, § 10.32, at 3–100, quoted with approval in, *e.g.*, *Martin v. Industrial Comm'n*, 75 Ariz. 403, 257 P.2d 596 (1953); *see also Martin v. Industrial Comm'n*, 73 Ariz. 401, 242 P.2d 286 (1952); *State Compensation Fund v. Delgadillo*, 14 Ariz.App. 242, 482 P.2d 491 (1971).

As a matter of fairness to the dependents, when the claimant's death has eliminated the only witness who could prove a causal connection, a softening of the rule requiring affirmative proof of the "arising" element has some theoretical justification. *See* 1 A. Larson, *supra* note 1, § 10.32, at 3–101 to 3–110. Arguably, similar justification is present when an injury during the course of employment renders the claimant either unconscious or unable to communicate. *See Sena v. Continental Casualty Co.*, 97 N.M. 753, 643 P.2d 622 (App.1982).

But we can find nothing to justify an extension of the rule to cases such as the one before us, where an unexplained fall left claimant alive, awake, and physically able to tell her story. Under such circumstances, fairness does not require that the claimant be relieved of the burden to provide affirmative proof that the fall was caused by a risk associated with or incidental to employment. *See Memorial Hospital v. Hairston*, 2 Va.App. 677, 347 S.E.2d 527, 529 (1986) (claim for compensation must be denied when claimant, who was in a position to explain the occurrence, fails to present evidence to establish that the injury arose out of employment).

In the case before us, no evidence was presented that would support a finding that any condition of the parking lot caused

or contributed to claimant's fall.[2] Although the administrative law judge noted that photographs of the parking lot appeared to show cracks and oil spots in the pavement in the area of the dumpster, claimant herself denied having slipped or tripped.

We conclude that the evidence was insufficient to support the administrative law judge's finding that claimant's injury arose out of her employment. Accordingly, the award is set aside.

EUBANK, P.J., and SHELLEY, J., concur.

---

2. Nor has claimant suggested that some characteristic of the pavement contributed to the severity of her injuries. In any case, it has long been the law in Arizona that an employer who merely furnishes a floor, however hard, does not thereby place the employee in a position that aggravates the effect of a fall. *See Valerio v. Industrial Comm'n,* 85 Ariz. 189, 334 P.2d 768 (1959). (We recognize that some language in *Murphy v. Industrial Comm'n,* 160 Ariz. 482, 774 P.2d 221 (1989), suggests a retreat from that position, but the evidence in that case established that the fall itself arose out of employment.)