796 P.2d 893

**CIRCLE K STORE # 1131,**
Petitioner Employer,

**Gab Business Services, Inc.,**
Petitioner Carrier,

v.

The **INDUSTRIAL COMMISSION OF ARIZONA,** Respondent,

**Pauline L. Shoemaker,**
Respondent Employee.

No. CV–89–0415–PR.

Supreme Court of Arizona,
In Banc.

Aug. 21, 1990.

Long, Lester & Lundmark, P.A. by Steven C. Lester, Phoenix, for petitioner employer, carrier.

Anita R. Valainis, Chief Counsel, Indus. Com'n of Ariz., Phoenix, for respondent.

Sherman R. Bendalin, Phoenix., for respondent employee.

## OPINION

CAMERON, Justice.

### I. JURISDICTION

Claimant employee, Pauline L. Shoemaker, petitioned this court to review a decision of the Arizona Court of Appeals that set aside her award for worker's compensation benefits. 162 Ariz. 560, 785 P.2d 80. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. §§ 12–120.24, 23–948 and Rule 23, Ariz.R.Civ.App.P., 17B A.R.S.

### II. ISSUE

Did claimant's injuries arise out of her employment within the meaning of A.R.S. § 23–1021(A)?

### III. FACTS AND PROCEDURAL BACKGROUND

On 14 January 1988, Pauline L. Shoemaker (claimant), an employee of Circle K Store # 1131 (Circle K), sustained injuries as the result of a fall that occurred next to a dumpster in the Circle K parking lot. She filed a worker's compensation claim and was denied benefits. Claimant timely requested a hearing to determine whether her injuries were compensable under A.R.S. § 23–1021(A), which requires that an employee's injuries or death result from an "accident arising out of and in the course of his employment." The parties stipulated that no medical testimony was necessary to establish that the fall caused claimant's injuries.

Claimant and Circle K's investigator testified at the hearing. The testimony showed that on 14 January 1988, claimant worked from 3 p.m.—11 p.m. One of claimant's work duties was to carry out the trash from her shift. Claimant testified that on the night in question she left work at approximately 11:30 when the midnight shift employee came on duty.

Before starting home, claimant picked up her belongings, some groceries, and the trash. She testified she fell after depositing the trash in a dumpster and turning around to pick up her things:

Q. Tell the Judge what happened at the dumpster?

A. Well, I lifted the lid, because they are closed most of the time, and I lifted the lid to put my trash in, set my things down that I had to go home, and put the trash in, turned around to and picked up my things to go home and that's when I fell. I don't know, I turned my ankle.

Q. When you say "things to go home" what do you mean by that?

A. Well, I had two small bags with a half gallon of milk and four rolls of tissue.

Q. So you had some personal—or you had purchased those?

A. Right. I purchased those at the store.

Q. When you walked out of the store and went to the dumpster you had in your arms what, please, or your hands?

\* \* \* \* \* \*

A. I had my purse and those two bags, half gallon of milk and four rolls of tissue, and a bag of trash.

Q. Your testimony is that you slipped and fell?

A. Right.

As to where her injuries occurred, claimant testified:

Q. When you had the accident where were you in relation to the dumpster?

A. Right next to the dumpster. As I turned around my ankle turned and it twisted my ankle.

Q. When you say you were right next to the dumpster, how close, can you give me feet or arms length or whatever?

A. Probably three or four feet.

Q. Could you have touched it if you would have reached back with one of your arms?

A. Possibly.

On cross-examination, claimant testified she had no trouble with her feet, and wore the type of shoes that Circle K preferred. She also answered questions regarding the origin or cause of her injuries:

Q. Is there anything, was there any obstacle, anything around there that would have caused you to trip, slip or, you know, anything that you're aware of in the immediate area that caused—

A. I wasn't aware of anything that I could have tripped on. All I know is my ankle turned.

\*    \*    \*    \*    \*    \*

Q. Is there anything about where you were standing, or anything in the vicinity that you, in your own mind, associate with your twisting your ankle?

A. Not to my knowledge. I just—it happened so fast.

Q. You picked up your grocery bags and turned?

A. And I was down—

Q. The dumpster looks like it's right on—there is a curb there, a gutter that runs along there?

A. Yes, Sir.

Q. Did you step into that and twist your ankle?

A. No, I didn't go that far when I was walking, because it's even with the walk, you see. Right there is the walk, and I was over here instead of right here is

where it was. I wasn't going to the street at all.

■ After the hearing, the Administrative Law Judge (ALJ) entered an award for a compensable claim. He found that claimant established, by a reasonable preponderance, that her injuries arose out of and in the course of her employment. Specifically, he found that her fall occurred in an area where she might reasonably be expected to be in connection with her employer's work, using a customary or permissible route from her workplace. Thus, he held that she sustained an injury "in the course of" her employment.[1] He also found that her injury "arose out of" her employment because: 1) no showing was made that claimant's fall was idiopathic in origin (resulting from a pre-existing infirmity); 2) the origin of the fall was unexplained; and 3) Arizona law does not require a claimant to offer a precise explanation as to why a fall occurred. The award was affirmed upon administrative review, and the respondents sought special action relief in the court of appeals.

The court of appeals set aside the award finding that although the injuries occurred in the course of claimant's employment, she failed to prove her injuries arose out of her employment. The court reasoned that because a claimant in an unexplained fall case is physically able to tell her story, he or she must provide affirmative proof that the fall was caused by a risk associated with or incidental to the employment. Because claimant presented no such explanation, the court of appeals held that her claim for compensation should have been denied and set aside the award.

## IV. DISCUSSION

■ In order for an industrial injury to be compensable, it must result from an "accident arising out of and in the course of" the claimant's employment. A.R.S. § 23–1021(A). The phrase "arising out of"

---

1. The property where the fall occurred was owned by the City of Goodyear. However, because it was used as a customary means of ingress and egress by Circle K employees, claimant was on her employer's premises when the fall occurred for purposes of worker's compensation law. *Pauley v. Industrial Comm'n,* 109 Ariz. 298, 302, 508 P.2d 1160, 1164 (1973) ("on premises" exception to going and coming rule adopted).

refers to the origin or cause of the injury, whereas the phrase "in the course of" refers to the time, place, and circumstances of the accident in relation to the employment. *Goodyear Aircraft Corp. v. Industrial Comm'n*, 62 Ariz. 398, 158 P.2d 511 (1945). In *Goodyear*, we stated that in order to prove the "arising out of" element of a claim, the injury must be "caused in whole or in part, or contributed by a *necessary* risk or danger of the employment, or *inherent* in its nature." 62 Ariz. at 409, 158 P.2d at 522 (emphasis in original).[2]

We recently reaffirmed that an injury "arising out of" employment refers to the origin or cause of claimant's injury. *Murphy v. Industrial Comm'n*, 160 Ariz. 482, 485, 774 P.2d 221, 224 (1989). In *Murphy*, an employee fell and was injured shortly after being told by his employer that he was being transferred to a different department with a pay cut. We found that the injury arose out of the employment because it resulted from work-related stress that caused the employee to fall. We stated:

> In the instant case, Murphy's physical injury resulted from work-related stress and, we believe, arose out of his employment. It is ironic that had Murphy tripped and fallen on the hard floor during work or had hit some machinery on the way down there would be little question that the accident arose out of and in the course of his employment. We do not believe, however, that falling to a floor as opposed to falling on a piece of machinery should make any difference.

*Id.* at 486, 774 P.2d at 225. The requisite causal connection was met in *Murphy* because uncontroverted medical testimony indicated that Murphy had fallen due to the news that he was being displaced.

The "arising out of" and "in the course of" employment tests are separate tests and both must be satisfied. *Peetz v. Industrial Comm'n*, 124 Ariz. 324, 325, 604 P.2d 255, 256 (1979); *Royall v. Industrial Comm'n*, 106 Ariz. 346, 349, 476 P.2d 156, 159 (1970). However, these two tests have been confused. For example, in *Goodyear*, we said the injury "arose out of" claimant's employment because "his employer's business required him to be at the place of the accident at the time it occurred." *Goodyear*, 62 Ariz. at 415, 158 P.2d at 528. This analysis focused on the time and place of the accident which is part of the "in the course of" employment analysis.

A recent court of appeals case used similar reasoning to conclude that an injury arose out of and in the course of employment. *Hansen v. Industrial Comm'n*, 141 Ariz. 190, 685 P.2d 1342 (App.1984). In *Hansen*, the claimant fell and injured herself at a Ramada Inn where she was performing in a play for her employer. The court held that, although claimant was not on the physical premises controlled by her employer at the time of the injury, the injury arose in the course of her employment because she was in the range of risk causally related to her employment. *Id.* at 195, 685 P.2d at 1347. The court also found that Hansen's injuries arose out of her employment because it was her employment that caused her to be at the Ramada Inn at the time of the injury. *Id.*

Claimant asserts that *Hansen* adopts the positional-risk doctrine, which provides that an injury "arises out of" the employment if it would not have occurred *but for* the fact the employment placed plaintiff at that location at that particular time. *See* 1 A. Larson, § 6.50, at 3–6 through 3–7. The doctrine creates a presumption in favor of

---

2. Prior to *Goodyear*, Arizona courts used the "increased risk" test to determine when an injury arose out of the employment. *See Netherton v. Lightning Delivery Co.*, 32 Ariz. 350, 355–56, 258 P. 306, 308 (1927) (death by lightning held not to arise out of employment where it was not proven that the deceased's employment was more dangerous than to the general public). The "increased risk" test is the prevalent test in the United States today and focuses on whether claimant's work increased the risk of injury. It is a quantitative determination that asks whether claimant was more exposed to the risk than the general public. 1 A. Larson, *THE LAW OF WORKMEN'S COMPENSATION* § 6.30, at 3–5 (1990). Although the increased risk test is no longer the test in Arizona, it has been cited as such. *See Industrial Indemnity Co. v. Industrial Comm'n*, 162 Ariz. 503, 504, 784 P.2d 709, 710 (App.1990).

the claimant, providing that compensation will be awarded if the claimant proves she was at a place she was required to be due to her employment. A number of states recognize the doctrine in Act of God cases.[3] In Arizona, this doctrine has been applied in cases of unexplained deaths. *See, e.g., Martin v. Industrial Comm'n,* 75 Ariz. 403, 411, 257 P.2d 596, 601 (1953); *Martin v. Industrial Comm'n,* 73 Ariz. 401, 404, 242 P.2d 286, 288 (1952); *State Comp. Fund v. Delgadillo,* 14 Ariz.App. 242, 244, 482 P.2d 491, 493 (1971).

Circle K asserts that a claimant may only prevail on the "arising out of" element by establishing: 1) the cause of the unexplained fall, and 2) the relationship of the cause to the employment. Circle K claims that if we adopt the positional-risk doctrine, all unwitnessed injuries will be compensable. This arguably would open the floodgates to injured employees who could use the Worker's Compensation Act as a general health and accident insurance policy. Circle K further asserts that a distinction must be made between neutral risk cases where the origin of the injury is neutral, and unexplained fall cases where no explanation whatsoever is offered for the injury.[4] While they concede that a neutral injury may be compensable, they argue that an injury without an explanation is not a compensable neutral injury.

Courts have taken three approaches in addressing the "arising out of" element in unexplained fall cases. A first approach requires the worker to rule out idiopathic causes for the fall, and if he or she carries

that burden, an inference arises that the fall arose out of the employment. Using this approach, the Oregon Supreme Court has applied a "work-connection" test to determine whether an injury arises out of and in the course of employment. *Phil A. Livesley Co. v. Russ,* 296 Or. 25, 672 P.2d 337 (Or.1983). The "work-connection" test focuses on whether the relationship between the injury and the employment is sufficient for the injury to be compensable. *Id.* It does not require claimant to prove each element of the Worker's Compensation Act separately; if the "in course of" test is fully met, it may compensate for the "arising out" of test, provided the employee rules out idiopathic causes. *Id.* As the court stated in *Russ:*

> [W]here the "course of employment" test is so fully met, where the cause-in-fact cannot be directly established, and where claimant has met his burden of eliminating idiopathic causes, we construe the Workers' Compensation Law to allow the inference that the unexplained fall "arose out of" claimant's employment.

*Id.* at 32, 672 P.2d 337.

A second approach places the burden on the employee to show a causal connection between the injury and the employment.[5] This is the most difficult burden of causation for an employee to meet, and benefits will be denied where a causal connection is not established. The court of appeals applied this standard in this case.

A third approach, which seems to be the majority approach, is the positional-risk doctrine. 1 A. Larson § 10.31(a), at 3–94

---

3.  *See, e.g., Nippert v. Shinn Farm Const. Co.,* 223 Neb. 236, 388 N.W.2d 820 (1986) (positional-risk doctrine applied to injury resulting from tornado); *National Fire Ins. Co. v. Edwards,* 152 Ga. App. 566, 263 S.E.2d 455 (1979) (injury by tornado); *Whetro v. Awkerman,* 383 Mich. 235, 174 N.W.2d 783 (1970) (injury by tornado); *Harvey v. Caddo De Soto Cotton Oil Co.,* 199 La. 720, 6 So.2d 747 (1942) (death resulting from cyclone); *Aetna Life Ins. Co. v. Industrial Comm'n,* 81 Colo. 233, 254 P. 995 (1927) (injury resulting from lightning).

4.  There are three types of employment risks: employment related, personal, and neutral. *See* 1 A. Larson, § 7, at 3–12 through 3–15. A neutral risk is one neither distinctly associated with

the employment nor personal to claimant. A fourth category is mixed risks, risks that involve a combination of two or more of the above categories. *Id.*

5.  *See, e.g., Slimfold Mfg. Co. v. Martin,* 417 So.2d 199 (Ala.App.1981) (death benefits denied where claimant failed to establish definite causal connection between work and injury); *McClain v. Chrysler Corp.,* 138 Mich.App. 723, 360 N.W.2d 284 (1984) (benefits denied); *Wheaton v. Reiser Co.,* 419 S.W.2d 497 (Mo.App.1967) (death benefits denied); *Eggers v. Industrial Comm'n,* 157 Ohio St. 70, 104 N.E.2d 681 (1952) (death benefits denied); *Grassel v. Garde Mfg. Co.,* 90 R.I. 1, 153 A.2d 527 (1959) (benefits denied).

through 3–95. In his treatise on worker's compensation law, Professor Larson states:

> In a pure unexplained-fall case, there is no way in which an award can be justified as a matter of causation theory except by a recognition that this but-for reasoning satisfied the "arising" requirement.

*Id.* This but-for reasoning is the foundation of the positional-risk doctrine. Under this doctrine, claimant is not required to rule out idiopathic causes, i.e. pre-existing infirmities. The positional-risk doctrine has been adopted by various jurisdictions under the reasoning that employees on the job and performing duties for their employers, should be compensated for injuries occurring in the course thereof.[6] As succinctly stated by Larson:

> An injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured. It is even more common for the test to be approved and used in particular situations. This theory supports compensation, for example, in cases of stray bullets, roving lunatics, and other situations in which the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he was injured by some neutral force, meaning by "neutral" neither personal to claimant nor distinctly associated with the employment.

1 A. Larson § 6.50, at 3–6 through 3–7. In cases adopting the positional-risk doctrine, if the "in course of" employment test is met, the injury will be presumed to "arise out of" the employment. For example, the Arkansas Court of Appeals held, in an unexplained fall case, that an employee is covered by worker's compensation if he is on the job and performing the duties of his employment. *Moore v. Darling Store Fixtures*, 22 Ark.App. 21, 732 S.W.2d 496, 500 (1987). The fact that the employee's employment brought him to the place of injury was sufficient to show work connection. *Id.*

We believe that an unexplained fall is a neutral injury, one neither distinctly personal to claimant nor associated with the employment. We hold that in the case of a neutral injury, the positional-risk doctrine applies. In this case, claimant would not have been at the place of injury *but for* the duties of her employment. She was required to throw out the trash from her shift, and was performing this duty on her way home. Consequently, a presumption arises that her injuries "arose out of" her employment. We reach our holding keeping in mind the policy of construing the Worker's Compensation Act liberally with a view of effectuating the principle of placing the burden of death and injury on the industry. *Pottinger v. Industrial Comm'n*, 22 Ariz.App. 389, 393, 527 P.2d 1232, 1236 (1974). In addition, because fault concepts have no bearing on whether or not worker's compensation should be awarded, an employee should not have to explain how an injury occurs, as long as it occurs in connection with her employment. *See Colvert v. Industrial Comm'n*, 21 Ariz.App. 409, 411, 520 P.2d 322, 324 (1974).

## V. DISPOSITION

The opinion of the court of appeals is vacated, and the award of the ALJ affirmed.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER and CORCORAN, JJ., concur.

---

**6.** *See, e.g., Employers Mut. Liab. Ins. Co. v. Industrial Acc. Comm'n,* 41 Cal.2d 676, 263 P.2d 4 (1953) (fall in course of employment arises out of employment despite idiopathic seizure); *Hacker v. St. Petersburg Kennel Club,* 396 So.2d 161 (Fla.1981) (employer has burden of proof to show idiopathic cause if an unexplained fall occurs while the employee is at his place of employment under circumstances that no evidence of cause is available); *Grimaldi v. Shop Rite Big V.,* 90 A.D.2d 608, 456 N.Y.S.2d 176 (App.Div.1982) (statutory presumption that an injury in the course of the employment arises out of the employment).