840 P.2d 282

**Earl MONTGOMERY, Petitioner,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Farmers Insurance Group, Respondent Employer,**

**Truck Insurance Exchange, c/o GAB Business Services, Inc., Respondent Carrier.**

**No. 1 CA–IC 90–163.**

Court of Appeals of Arizona, Division 1, Department C.

April 23, 1992.

Reconsideration Denied June 23, 1992.

Review Denied Dec. 1, 1992.

Charles M. Wilmer, P.C. by Charles M. Wilmer, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, Indus. Com'n of Ariz., Phoenix, for respondent.

Long, Lester & Lundmark, P.A. by R. Todd Lundmark, Phoenix, for respondents employer and carrier.

## OPINION

CONTRERAS, Presiding Judge.

This is a special action review of an Arizona Industrial Commission award denying compensability for Lyme disease. Four issues are presented on review: (1) whether the Administrative Law Judge erred by finding that the commonalty rule precluded compensability; (2) whether the positional risk doctrine mandated compensability; (3) whether the quantum theory of work-connection precluded compensability; and (4) whether the petitioner employee's ("claimant's") injury constituted an occupational disease. We conclude that the Ad-

ministrative Law Judge erroneously found that the commonalty rule precluded compensability. Accordingly, we set aside the award.

### Factual and Procedural History

Claimant was an insurance claims adjustor in Phoenix, Arizona. He attended a two-week property insurance training school in Monrovia, California, at the request of the respondent employer, Farmers Insurance Group ("Farmers"). Farmers paid for claimant's transportation, tuition, and lodging. Claimant later alleged that while he was attending the school, he was bitten by a tick that carried Lyme disease.

Claimant testified that on or about January 17, 1989, during the second week of the school, he noticed a raised insect bite on his right rear shoulder. He stated that he showed the bite to his wife when he returned to Arizona. She confirmed that she had seen a bite "the size of a half-dollar ... red on the outside with a white ring and then red in the middle." By May 19, 1989, claimant had developed flu-like symptoms. These were followed by numbness and tingling in his extremities, pain in his joints, poor concentration, disorientation, fatigue, and vision problems. He saw a number of physicians, some of whom ultimately diagnosed Lyme disease.

Claimant filed a worker's report of injury, which was denied for benefits by the respondent carrier, Truck Insurance Exchange. Claimant then filed a timely protest, and various lay and medical witnesses testified at the four hearings that were subsequently held. Conflicting medical testimony regarding claimant's symptoms and diagnosis was presented. However, the following finding by the Administrative Law Judge makes it unnecessary to discuss that testimony in detail:

5. For purposes of this award it will be assumed arguendo that the applicant was bitten by a tick, that as a result he became afflicted with Lyme disease and that this arose out of and within the course of his employment with the defendant employer. Notwithstanding all of these arguendo assumptions, the claim is not compensable for other reasons set forth below.

After the Administrative Law Judge made this finding, he cited *Treadway v. Industrial Commission,* 69 Ariz. 301, 213 P.2d 373 (1950), for the proposition that the commonalty rule precluded compensability for claimant's Lyme disease.

On administrative review, the Administrative Law Judge supplemented his award for a noncompensable claim by finding that Lyme disease was not an occupational disease within the meaning of Arizona Revised Statutes Annotated ("A.R.S.") section 23–901.01 (1983). He also affirmed the noncompensable award and reiterated his position that the *Treadway* commonalty rule was the sole basis for it:

4. The noncompensable award was based on the 'commonalty' rule cited therein. This is a general rule of law which has been applicable to injuries, not only to occupational diseases. It just happens that the occupational disease statute contains a codification of this legal principle in subparagraph (4). However, reference to this principle in the noncompensable award is not intended to reflect that this claim was being decided under the occupational disease statutes.

Claimant then brought this special action.

### Discussion

We start with the basic premise that the claimant has the burden of establishing all of the statutory elements of a compensable worker's compensation claim. *Toto v. Industrial Comm'n,* 144 Ariz. 508, 512, 698 P.2d 753, 757 (App.1985). In order to do so, he must demonstrate that he has suffered an injury by accident arising out of and in the course of his employment. *See* A.R.S. § 23–1021(A). The statutory "arising out of" requirement refers to the origin or cause of the injury; the "in the course of" requirement refers to the time, place, and circumstances of the accident in relation to the employment. *Peter Kiewit Sons' Co. v. Industrial Comm'n,* 88 Ariz. 164, 168, 354 P.2d 28, 30 (1960); *Scheller v. Industrial Comm'n,* 134 Ariz. 418, 420, 656 P.2d 1279, 1281 (App.1982).

Claimant first argues that the *Treadway* commonalty rule is inapplicable to the facts of this case. We agree. In *Treadway*, the claimant sought compensation for valley fever, which he allegedly contracted while unloading dusty surplus Army tents from California at a Phoenix warehouse. The Industrial Commission denied compensability. Our supreme court affirmed the award, finding that the claimant had failed to establish a causal connection between his employment and the valley fever. However, the court recognized that under certain circumstances, "an employee contracting a disease, whether in the immediate place of his employment, or in some other place in pursuance of his employer's direction, may recover compensation as for an injury by accident arising out of and in the course of his employment." 69 Ariz. at 307, 213 P.2d at 377.

■ The court then set forth what has become known as the commonalty rule: in order for a claimant to recover compensation for a disease, "he must establish the fact that he was subjected to some special exposure in excess of that of the commonalty." *Id.* at 308, 213 P.2d at 377. The claimant in *Treadway* was unable to meet this burden of proof because valley fever is endemic in the desert regions of Arizona and everyone who lives here is exposed to its spores on a daily basis, at home as well as at work. This made it impossible for the claimant to establish that he had experienced any exposure greater than that of the general population. *See also O'Connor v. Industrial Comm'n*, 19 Ariz.App. 43, 504 P.2d 966 (1972) (since valley fever spores were prevalent throughout the area in which claimant lived and worked, he could have contracted disease anywhere in the geographic area at any time of the day).

■ The circumstances of the instant case are distinguishable. The only evidence presented on the question indicated that Lyme disease does not exist in Arizona. Before the first hearing was held, claimant submitted an Arizona Department of Health Services pamphlet entitled "Tick-Borne Diseases." The pamphlet stated that none of the types of ticks that were known to carry Lyme disease were found in Arizona, that no cases of the disease had ever been contracted in Arizona, and that Arizona was considered a nonendemic area for the disease. At the second hearing, Dr. Tim Kuberski, an infectious disease specialist, gave the following testimony:

> So, you would have to be sure that a patient was in an area where this disease is endemic. By that I mean there are certain places in the United States where this tick does not exist. Arizona is one of them. In other words there basically is no Lyme disease in Arizona because the tick does not exist here.

Later in his testimony, Dr. Kuberski made the following statement: "You know, we will have patients ... who come from endemic areas and will have the disease, but there has not been anyone who has been diagnosed as originating from the state of Arizona."

Because everyone in Arizona is exposed to valley fever, the claimants in *Treadway* and *O'Connor* could not show that their employment subjected them to "some special exposure in excess of that of the commonalty." *Treadway*, 69 Ariz. at 308, 213 P.2d at 377. In contrast, the evidence that claimant presented in this case indicated that any exposure to Lyme disease that he experienced in connection with his employment would exceed that of Arizona's general population. No contradictory evidence was presented. Moreover, claimant was able to demonstrate that his employment had actually subjected him to an increased risk of contracting the disease. *See* 1 Arthur Larson, *The Law of Workman's Compensation* § 8.51–.52, at 3–50 to –55 (1990). At the last hearing, Dr. Philip Rubin, an infectious disease specialist, testified that three cases of Lyme disease had been contracted in the area to which claimant was required to travel to attend the training school. This showing of an increased risk connected with claimant's employment was sufficient to establish compensability. *See, e.g., Industrial Indemn. v. Industrial Comm'n*, 162 Ariz. 503, 784 P.2d 709 (App. 1989). Based upon the record in this case,

we conclude that the Administrative Law Judge erred in ruling that the commonalty rule precluded compensability. We must therefore set the award aside.

Claimant argues in the alternative that the *Treadway* commonalty rule has been "obliterated" by the Arizona Supreme Court's adoption of the positional risk doctrine in *Circle K Store # 1131 v. Industrial Comm'n*, 165 Ariz. 91, 796 P.2d 893 (1990). Our conclusion that the commonalty rule does not preclude compensability in this case makes it unnecessary for us to fully consider that argument other than in conjunction with a theory which Farmers has advanced.

■ Farmers maintains that the quantum theory of work-connection precludes a finding of compensability. This theory has been explained as follows:

> [T]he "course of employment" and "arising out of employment" tests are not, and should not be, applied entirely independently; they are both parts of a single test of work-connection, and therefore deficiencies in the strength of one factor are sometimes allowed to be made up by strength in the other.
>
> . . . .
>
> . . . One is almost tempted to formulate a sort of quantum theory of work-connection: that a certain minimum quantum of work-connection must be shown, and if the "course" quantity is very small, but the "arising" quantity is large, the quantum will add up to the necessary minimum, as it will also when the "arising" quantity is very small but the "course" quantity is relatively large.
>
> But if both the "course" and "arising" quantities are small, the minimum quantum will not be met.

1A Larson, *supra*, § 29.10, at 5–476 to –478.

Farmers contends that in the instant case, both the "arising out of" and the "in the course of" elements are so weak that they do not rise to the minimum quantum of work-connection necessary for compensability. We disagree.

This court has made the following statement with regard to business travel:

> "Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable."

*Peterson v. Industrial Comm'n*, 16 Ariz. App. 41, 43–44, 490 P.2d 870, 872–73 (1971) (quoting 1A Larson, *supra*, § 25.00, at 5–275). In the present case, claimant alleged that he was bitten by a tick that carried Lyme disease while he was staying in a California motel and attending a training program at his employer's request and expense. He testified that he did not turn the trip into a vacation and that he spent all of his time either in class or at the motel. This evidence was sufficient to place his activities within the course of his employment.

■ Under the positional risk doctrine, the "arising out of" element of a compensable claim is satisfied if the injury would not have occurred " '*but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured.' " *Circle K*, 165 Ariz. at 96, 796 P.2d at 898 (*quoting* 1A Larson, *supra*, § 6.50, at 3–6) (emphasis in Larson). In the instant case, claimant was only in an area in which Lyme disease was endemic because his employer required him to be there. Being bitten by a tick carrying the disease is not the type of injury that is normally associated with attending a training program or staying in a motel. In our opinion, it is a completely random occurrence that is similar to injuries caused by stray bullets or roving lunatics. In *Circle K*, our supreme court recognized that the positional risk doctrine supports compensation for these types of injuries, which are only connected with a claimant's employment in that the obligations of the employment " 'placed the employee in the particular place at the particular time when he was injured by some neutral force, mean-

ing by 'neutral' neither personal to claimant nor distinctly associated with the employment.' " *Id.* (quoting 1A Larson, *supra,* § 6.50 at 3–7.)

Both the "course of employment" and the "arising out of" elements are strong enough to render claimant's injury compensable under the quantum theory of work-connection.

Finally, Farmers argues that claimant's Lyme disease was an occupational disease and that the Administrative Law Judge therefore erred in failing to apply the occupational disease statutes. Before we reach the merits of this argument, we must address claimant's assertion that Farmers did not properly present the issue to this court because it failed to file a request for affirmative relief pursuant to Rule 10, Arizona Rules of Procedure for Special Actions.

■ A party seeking affirmative relief from the court of appeals in a special action review of an Industrial Commission award must include a request for that relief in his notice of appearance. *See Neitman v. Industrial Comm'n,* 20 Ariz.App. 53, 55, 510 P.2d 52, 54 (1973). However, a party need not request affirmative relief in order to present alternative bases for sustaining an award where he is not seeking any relief beyond that which has been awarded. *See Stiles v. Industrial Comm'n,* 25 Ariz.App. 543, 545, 545 P.2d 54, 56 (1976). In this case, Farmers obtained a noncompensable claim award from the Industrial Commission. Because it is not seeking any additional relief, no request for affirmative relief was necessary.

■ Under the current statutory definition, occupational diseases are diseases "due to causes and conditions characteristic of and peculiar to a particular trade, occupation, process or employment, and not the ordinary diseases to which the general public is exposed...." A.R.S. § 23–901(12)(c). In *Lorentzen v. Industrial Comm'n,* 164 Ariz. 67, 790 P.2d 765 (App.1990), the Court of Appeals, Division Two, discussed the nature of occupational diseases. In *Lorentzen,* a school teacher who had a history of pesticide allergies suffered severe physical allergic reactions following routine pesticide spraying at her school. The Administrative Law Judge concluded that her exposure to pesticides while on the job resulted in an occupational disease. He issued an award denying compensability because he found that she had failed to meet her burden of proof under the occupational disease statutes. On review, the court of appeals held that because the petitioner was a school teacher, exposure to pesticides was not a cause or condition peculiar and particular to her employment. It ruled that she was entitled to compensation for an injury by accident arising out of and in the course of employment.

*Lorentzen* provides guidance in this case. Here, claimant is an insurance claims adjustor. The carrier has not argued, nor in our opinion could it argue, that exposure to Lyme disease is coincident with his employment. The Administrative Law Judge therefore correctly concluded that the occupational disease statutes are inapplicable in this case. *See also McCreary v. Industrial Comm'n,* 172 Ariz. 137, 835 P.2d 469 (App.1992).

For all of the foregoing reasons, we set aside the award.

McGREGOR and MELVYN T. SHELLEY, JJ., concur.

Note: Judge Melvyn T. Shelley, a retired judge of the Court of Appeals, was authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to article 6, section 20, of the Constitution of Arizona, and A.R.S. § 38–813.