NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KEVIN TRIMBLE, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

CAPITAL GRILLE HOLDINGS, *Respondent Employer*,

XL INSURANCE AMERICA, *Respondent Carrier*.

No. 1 CA-IC 21-0022
FILED 2-1-2022

Special Action - Industrial Commission
ICA Claim No. 20200-670001
Carrier Claim No. 006829-487189-WC-01
The Honorable Rachel C. Morgan, Administrative Law Judge

**AFFIRMED**

COUNSEL

Crossman Law Offices, PC, Phoenix
By Avery N. Crossman
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Lundmark Barberich LaMont & Slavin PC, Phoenix
By Lisa M. LaMont
*Counsel for Respondent Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Maria Elena Cruz joined.

---

**P E R K I N S**, Judge:

¶1        Kevin Trimble asks us to set aside an Industrial Commission of Arizona ("ICA") Award that finds his injury non-compensable. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        Trimble worked as a restaurant server for Capital Grille Holdings in February 2020. On a busy Saturday night, and after working a double shift, Trimble collapsed and struck his head on the kitchen floor. Several co-workers were nearby, but no one saw Trimble's fall. One of them heard Trimble hit the floor behind her, immediately turned toward him, and saw him "seizing" on the floor with blood under his head. Others rushed in and witnessed the same thing. Trimble's coworker drove him to a hospital, where he underwent brain surgery for a "rapidly enlarging hematoma." The surgery was successful, and Trimble left the hospital a few days later.

¶3        XL Insurance America denied Trimble's worker's compensation claim. Trimble challenged the denial of his claim, and the ICA held a hearing. Trimble, four of his co-workers, and two medical experts testified. Trimble testified he did not remember falling to the floor, although he remembered feeling lightheaded within the hour before he fell. He believed he may have briefly lost consciousness. Trimble did not take any significant breaks and he ate only a few french fries during his shifts. He testified he suffered a single seizure about eight years before his fall but had received no subsequent treatment for seizures.

¶4        Trimble's co-workers each testified that they did not see Trimble fall but had observed him appear to have a seizure while on the

2

floor. One of his co-workers testified Trimble rubbing his eyes and saying he was tired before the fall. There is no record evidence of any tripping or slipping hazards on the floor. None of the witnesses testified that Trimble hit his head on anything other than the floor.

¶5        Dr. Abhishiek Sharma, the neurosurgeon who performed Trimble's emergency craniotomy, testified the surgery was necessitated by a "rapidly expanding hematoma on [Trimble's] brain" caused by recent head trauma. A pre-operation CT scan showed no sign of an aneurysm. Sharma could not say with certainty whether Trimble's employment caused him to fall, though Sharma acknowledged it was possible.

¶6        Dr. Leo Kahn, a neurologist, also testified after reviewing Trimble's medical records. Kahn assumed Trimble fell without tripping, slipping, or being pushed. Kahn agreed with Sharma that Trimble's head hitting the floor caused Trimble's head trauma. Kahn identified five possible medical reasons to explain Trimble's collapse: (1) dehydration; (2) low blood pressure; (3) irregular heartbeat; (4) seizure; and (5) an unknown reason that caused Trimble to faint. Kahn ruled out the first two possibilities because Trimble's lab results showed he was not dehydrated or suffering from low blood pressure. Kahn ruled out a heart problem because Trimble did not have low blood pressure or a history of heart disease. Kahn did not know whether the seizure resulted from Trimble's head hitting the floor or whether the seizure occurred while he was standing and caused him to fall. But Kahn concluded a seizure was the most likely explanation for Trimble's fall given Trimble's prior seizure. Kahn admitted he could not rule out that Trimble had slipped and then fell, and he agreed he did not "know" what caused Trimble's fall.

¶7        The administrative law judge ("ALJ") found the lay witnesses credible and Kahn's opinion "more probably correct." The ALJ thus found Trimble's claim non-compensable. Trimble now brings this special action review.

**DISCUSSION**

¶8        We defer to the ALJ's factual findings, but we review questions of law *de novo. Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). Claimants must prove all elements of a compensable claim. *Toto v. Indus. Comm'n*, 144 Ariz. 508, 512 (App. 1985). Compensability requires both legal and medical causation. *Grammatico v. Indus. Comm'n*, 211 Ariz. 67, 71, ¶ 19 (2005). A claimant establishes legal causation by demonstrating the accident arose out of and in the course of employment.

*Id.* A claimant proves medical causation by establishing that the accident caused the injury. *Id.* at ¶ 20. Here, the parties agree Trimble's injury occurred within in the course of his employment and was caused by his head hitting the floor.

¶9   The parties only dispute whether Trimble suffered an unexplained or idiopathic fall. An unexplained fall is one where no explanation whatsoever is offered for the injury. *Circle K Store No. 1131 v. Indus. Comm'n*, 165 Ariz. 91, 95 (1990). An idiopathic fall is one which results from a pre-existing infirmity and is non-compensable. *Id.* at 93.

¶10   There are three types of injury risks from employment: employment-related risks; personal risks; and neutral risks. *Id.* at 95 n.4. As relevant here, an unexplained fall is considered a neutral risk, "one neither distinctly associated with the employment nor personal to claimant." *Id.* In *Circle K*, a worker fell in the parking lot while taking out trash. While the worker remembered falling there were no witnesses and neither party could explain why the worker fell. *Id.* at 92-93, 96. Our Supreme Court adopted the positional-risk doctrine for cases involving neutral risks. *Id.* at 96. "An injury arises out of the employment if it would not have occurred *but for* the fact that . . . the employment placed claimant in the position where he was injured." *Id.* (cleaned up). In the case of an unexplained fall, the injured worker is entitled to a rebuttable presumption that the injuries from the fall arose out of the employment. *Id.* at 96. This presumption shifts the burden from the injured worker to the employer to prove an injury cause unrelated to employment.

¶11   In *Hypl v. Indus. Comm'n*, we reached the same conclusion by a different route. 210 Ariz. 381 (App. 2005). There, New Mexico police stopped an erratic driver transporting goods from Nogales to El Paso. *Id.* at 383, ¶ 2. Police discovered the driver was injured and rushed him to a hospital with a fractured skull, which required emergency surgery. *Id.* at ¶¶ 2–3. When the driver awoke from an eight-hour post-surgery coma, he could not remember what caused his injury. *Id.* at ¶ 3. The ICA found his claim non-compensable because he had not shown that the injury was connected to his employment. *Id.* at ¶¶ 2–4. We concluded when there are no witnesses, and a worker is found injured on the job, he was in the course and scope of employment and entitled to the "unexplained death presumption." *Id.* at 386, ¶ 13. "[T]he unexplained death presumption softens *both* the in the course of employment element and the *arising out of employment* element." *Id.* (emphasis added). We applied the presumption to cases in which the worker is not killed but the injury removed the only possible witness, the worker himself, holding:

> if [the injured worker] can provide a sufficient factual basis to allow an inference that he was injured in the time and space limitations of his employment, he is entitled to a presumption that his injury occurred in the course of and arose out of his employment.

*Id*. at 388, ¶ 21.

**¶12**        Trimble's only allegation of error is that the ALJ failed to apply the unexplained fall presumption when it analyzed whether the injury arose out of his employment. While it may be true the ALJ evaluated whether Trimble's fall was idiopathic referencing *Circle K.*, when it should have relied on *Hypl* because of the lack of witnesses and Trimble's memory loss, we find no error. Although the ALJ's decision is not a model of clarity, the ALJ nonetheless correctly analyzed whether Respondents rebutted the presumption, despite its citations to *Circle K.* The ALJ properly identified the issue as "whether this injury arose out of the employment." The ALJ then noted an unexplained fall "is rebuttably presumed to 'arise out of' employment if the fall occurred 'in the course of' employment," citing *Circle K.* Finally, the ALJ found Respondents "demonstrated sufficient evidence to rebut the presumption under *Circle K.*" The ALJ then described Trimble's fall as "idiopathic," but we do not believe this caused any legal harm to Trimble. Whether the fall was idiopathic, and thus not compensable, *see Circle K.*, 165 Ariz. at 93, or Respondents rebutted the presumption that the injury arose out of employment, the record supports the ALJ's conclusion that the employment did not contribute to Trimble's injury. Kahn's unrebutted testimony indicated a seizure most likely caused Trimble's fall. The ALJ thus properly found that Respondents rebutted the *Hypl* presumption.

## CONCLUSION

**¶13**        We affirm the Award.

