707 A.2d 1033

TEDDY W. BIRD, PETITIONER–RESPONDENT, v. SOMERSET HILLS COUNTRY CLUB, RESPONDENT–APPELLANT, v. SECOND INJURY FUND,[1] RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 9, 1998—Decided March 3, 1998.

---

[1] The Second Injury Fund was dismissed as a party pursuant to *N.J.S.A.* 34:15–35, and that action is not contested on appeal.

518

Before Judges PETRELLA, SKILLMAN and STEINBERG.

*Randolph Brause*, argued the cause for appellant (*Brause & Brause*, attorneys; *Randolph Brause* and *Peter Ventrice*, of counsel and on the brief).

*Eric S. Lentz*, argued the cause for respondent Teddy W. Bird.

A statement in lieu of brief was submitted by the Second Injury Fund (*Peter Verniero*, Attorney General, attorney; *Cheryl B. Kline*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

Somerset Hills Country Club (Somerset Hills) appeals from an award of workers' compensation to its employee, Teddy W. Bird, who was found to have contracted Lyme disease while working as

a groundskeeper for Somerset Hills. Somerset Hills contends that Bird did not prove that he suffered from a compensable occupational disease under *N.J.S.A.* 34:15–31; that the examining physician should not have been permitted to give an expert opinion on causation; that the Workers' Compensation judge erred in admitting and relying upon medical journal articles offered by Bird; that Bird failed to provide timely notice of his claim to his employer and Bird failed to prove that he even had Lyme disease.

Bird lives in a "residential town" area in Greenbrook. His backyard is fenced in and he has a cat and a dog. Around March 1989, Bird began his employment at Somerset Hills, a golf club located in a relatively undeveloped setting that is home to many types of wildlife such as woodchucks, squirrels, deer, ducks, geese, chipmunks, birds and other animals. His job consisted of picking up trees and tree limbs, maintaining the lawn, and otherwise tidying up the golf course year round.

According to Bird's testimony, around the summer of 1991 he began experiencing extreme fatigue and drowsiness and went to his doctor with these complaints. Based upon Bird's daily activities and a series of tests ruling out other illnesses, his treating doctor testified that in October 1992 he diagnosed Bird with Lyme disease. This was corroborated by a specialist to whom Bird was referred by his treating doctor. At the time of his workers' compensation hearing Bird was still suffering from the symptoms of Lyme disease and remained unable to work.

Somerset Hills' expert, a specialist in the field of Lyme disease, testified and disagreed with both the examining doctor's diagnosis of Lyme disease in Bird's case and the commonly recognized methods of contracting it.

We are satisfied that Somerset Hills' arguments are without merit, *R.* 2:11–3(e)(1)(A) and (E), and affirm. We add the following comments.

## I.

Somerset Hills urges that Bird did not prove that he suffered from Lyme disease, and, alternatively, if he suffered from Lyme disease, he did not prove that he contracted it in the course of his employment.

Bird had the burden of proof to establish all elements of his case. Thereafter, the burden to defeat Bird's claim and establish contrary facts and legal conclusions exonerating the employer or mitigating liability shifted to the employer. *Gulick v. H.M. Enoch, Inc.*, 280 *N.J.Super.* 96, 109, 654 *A.*2d 987 (App.Div.1995); *Pollack v. Pino's Formal Wear & Tailoring*, 253 *N.J.Super.* 397, 410–412, 601 *A.*2d 1190 (App.Div.), *certif. denied*, 130 *N.J.* 6, 611 *A.*2d 646 (1992).

Bird's doctors agreed that Bird probably had contracted the disease on the job. His work often took him to the "rough", or the edge of the woods, where infected tick larvae often are found. He spent about 40 hours a week outdoors at his workplace, year-round, compared with only a few hours at home gardening.

Even though Somerset Hills' expert had special qualifications in Lyme disease, his assertion that it was less probable that Bird was exposed at work than at home was inconsistent with the prevailing medical standards as testified to by Bird's witnesses and as presented in the medical literature submitted to the court.

A disease is compensable if it falls within the purview of *N.J.S.A.* 34:15–31, which states:

a. For the purpose of this article, the phrase "compensable occupational disease" shall include all diseases arising out of and in the course of employment, which are due in a material degree to causes and conditions which are or were characteristic of or peculiar to a particular trade, occupation, process, or place of employment.
b. Deterioration of a tissue, organ, or part of the body in which the function of such tissue, organ or part of the body is diminished due to the natural aging process thereof is not compensable.

"[I]n a material degree" has been held to mean "an appreciable degree or a degree substantially greater than de minimis." *Fiore v. Consolidated Freightways*, 140 *N.J.* 452, 659 *A.*2d 436 (1994).

In determining whether there is a nexus between the injury or disease and the occupational hazards, "[c]ompensation judges should be particularly skeptical of expert testimony that supports or contests a finding of causation on the basis of reasoning inconsistent with prevailing medical standards." *Hellwig v. J.F. Rast & Co.,* 110 *N.J.* 37, 54, 538 *A.*2d 1243 (1988).

Taking note of the differing medical opinions, the compensation judge decided that Bird's evidence was more credible. We find no reason to disturb his determination that Bird's Lyme disease was more probably than not contracted at work.[2] The compensation judge rejected the proofs submitted by Somerset Hills and credited those of petitioner. We affirm that decision based upon sufficient credible evidence in the record supporting the compensation judge's findings. *Close v. Kordulak Bros.,* 44 *N.J.* 589, 598–99, 210 *A.*2d 753 (1965).

## II.

Somerset Hills contends that it was a violation of *N.J.R.E.* 703 and reversible error for the compensation judge to allow the treating physician to testify as an expert on the causation of Lyme disease, and it had not been informed that the doctor would be an expert witness.

However, the rules of evidence are not binding in a workers' compensation trial. *N.J.S.A.* 34:15–56. Additionally, in a workers' compensation case, a treating physician is often in a better position to express opinions as to cause and effect than an

---

[2] Causation in Lyme disease cases is a difficult question. A number of jurisdictions have held that Lyme disease in some situations was probably contracted at work and therefore held it compensable. *See, e.g., Montgomery v. Industrial Comm'n of Arizona,* 173 *Ariz.* 106, 840 *P.*2d 282 (Ct.App.1992); *Foxbilt Elec. v. Stanton,* 583 *So.*2d 720 (Fla.Dist.Ct.App.1991), *review dismissed* 589 *So.*2d 290 (Fla.1991); *Cigna Ins. Co. of Texas v. Evans,* 847 *S.W.*2d 417 (Tex.Ct.App.1993). *But cf. Maxwell v. Carl Bierbaum, Inc.* 48 *Ark.App.* 159, 893 *S.W.*2d 346 (1995) (Cooper, J., dissenting); *Koester v. State Ins. Fund,* 124 *Idaho* 205, 858 *P.*2d 744 (1993).

expert who merely is examining the patient in order to give expert testimony. *Bober v. Independent Plating Corp.*, 28 *N.J.* 160, 167, 145 *A.*2d 463 (1958).

As to the claim of lack of notice, the compensation judge asked Somerset Hills' attorney to object if he was confronted with surprise testimony. There was no showing that the testimony of Bird's treating physician was a surprise. Nor did that testimony unduly prejudice Somerset Hills. There was no reversible error.

## III.

Somerset Hills also contends that the compensation judge erred in admitting medical journal articles submitted by Bird into evidence, and relying on them in his decision. It contends that this violated *N.J.R.E.* 803(c)(18), as the treating physician did not rely upon these articles in his testimony. *See Jacober v. St. Peter's Medical Center*, 128 *N.J.* 475, 608 *A.*2d 304 (1992).

Aside from the fact that the rules of evidence are not binding in a Workers' compensation hearing, *N.J.S.A.* 34:15–56, *Jacober* does not support Somerset Hills' position. There it was held that a text may be admitted as a learned treatise by expert testimony, and that the treatise must be relied upon by experts in the field, albeit not necessarily by the expert on the stand. *Id.* at 495–496, 608 *A.*2d 304. Bird's attorney sought to introduce these articles through the treating physician. In the interests of time the compensation judge limited questioning and allowed them as "accepted validated relevant medical journals that are shown to be scientifically reliable."

Nor is this case analogous to *Paco v. American Leather Mfg. Co.*, 213 *N.J.Super.* 90, 516 *A.*2d 623 (App.Div.1986) where the compensation judge made his determination solely upon the petitioner's testimony. The employer in *Paco* was limited to presenting medical reports from its examining doctors, and its own witnesses were not permitted to testify. We held that such a procedure infringed upon the employer's due process rights.

The record shows that the compensation judge here held a fair and impartial hearing, and did not preclude testimony from any proffered witnesses. There was no infringement on Somerset Hills' due process rights. The attorney for Somerset Hills stated at the time the journal articles were presented to the judge that "they do appear on the face of it [ ] reputable journals." The compensation judge's decision accords with the public policy behind not strictly applying the rules of evidence to Workers' compensation hearings in order to simplify the presentation of proofs.[3]

## IV.

■ Finally, Somerset Hills argues that because the injury should have been characterized as an accident under *N.J.S.A.* 34:15–17, which prescribes a ninety day notice requirement for an injury occurring on the job, and *N.J.S.A.* 34:15–51, which contains a two year limitation for filing a workers' compensation petition, Bird's petition was time barred.

However, the compensation judge properly characterized the injury as a disease, and held that it fell under the broader notice provisions of *N.J.S.A.* 34:15–33, which states:

> Unless the employer [has] actual knowledge that the employee has contracted a compensable occupational disease ... notice to be effective must be given within a period of five months after the date when the employee shall have ceased to be subject to exposure to the occupational disease, or within ninety days after the employee knew or ought to have known the nature of his disability and its relation to his employment, whichever period is later in duration ...

Here, the diagnosis was not made until October 1992. Bird told his employer that same month that he was suffering from Lyme disease. The exact date Bird was bitten by the tick that transmitted the Lyme disease was unknown. While the treating physician

---

[3] The compensation judge pointed out that *N.J.S.A.* 34:15–60 limits the petitioner's forensic physician witness fees to $200 for a report and $250 for testimony, with a total of not more than $450. There is a $1500 ceiling on treating physicians. Employers and insurers are not subject to such limits. The compensation judge explained that "learned treatises level this playing field."

testified that Lyme disease is not a latent disease, the testimony shows that the symptoms are gradual, change over time, and are vague enough to make diagnosis elusive. As the compensation judge stated, "it is inconceivable that the legislature would require a worker to file a claim or give notice of an injury before the worker even knew he had been injured."

We affirm substantially for the reasons set forth in Workers' Compensation Judge Moncher's September 16, 1996 opinion.