**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3431-18T2

JOSEPH RILEY,

     Petitioner-Respondent,

v.

THOMAS COMPANY, INC.,

     Respondent-Appellant.

_____

Submitted October 2, 2019 – Decided November 1, 2019

Before Judges Vernoia and Susswein.

On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2015-22698.

Burns White LLC, attorneys for appellant (Thomas Crean Kelly, on the briefs).

Kotlar, Hernandez & Cohen LLC, attorneys for respondent (Norman L. Ginsberg and Matthew Joseph Solin, on the brief).

PER CURIAM

In this workers' compensation action, Thomas Company, Inc. (Thomas) appeals from a March 1, 2019 order denying Thomas's motion to dismiss Joseph Riley's (Riley) claim petition; requiring that Thomas provide medical benefits for Riley's March 30, 2018 left ankle replacement surgery and an additional surgery recommended by Riley's treating physician, Dr. D. Scot Malay; directing that Thomas continue to provide temporary disability benefits; and designating Dr. Malay as Riley's authorized physician. We vacate the court's order and remand for further proceedings.

I.

The Workers' Compensation Petition and Answer

On June 30, 2015, Riley was injured performing roofing work while employed by Thomas. He filed a workers' compensation petition claiming, in pertinent part, that he suffered injuries to his left foot and ankle.[1] In its September 18, 2015 answer to the petition, Thomas denied Riley suffered the claimed injuries during the course of his employment and noted "medical records indicate that [Riley] may have needed surgery prior to the alleged date

---

[1] Riley also claimed injuries to his right leg and knee. We limit our discussion of the alleged injuries to Riley's left foot and ankle because the order challenged on appeal pertains solely to the medical benefits and temporary disability benefits related to those injuries.

of injury." Thomas further asserted that it "provided benefits without an admission of liability pending a [need for treatment] exam . . . with Dr. James Lamprakos."

The 2016 Motions

In June 2016, Thomas filed a motion to dismiss the claim or, in the alternative, to terminate Riley's temporary disability benefits. Thomas relied on two reports from Dr. Lamprakos, who opined there was significant disability to Riley's left foot and ankle prior to the June 30, 2015 accident and "a significant and severe past medical/past surgical history with regard to the left foot/ankle" as a result of a prior motor vehicle accident, and that in November 2014, seven months before the work-related accident, Riley and Dr. Malay had "a plan to surgically address . . . Riley's ongoing problems with his left foot/ankle." Dr. Lamprakos determined there was a seventeen and one-half percent disability "associated with the sprain/strain mechanism to the left ankle," two percent of which he attributed to the June 30, 2015 accident. Dr. Lamprakos concluded the accident resulted in a sprain or strain of Riley's left foot or ankle, and no further medically necessary treatment was required for any injury to the left foot and ankle "associated with" the accident.

A-3431-18T2

Riley opposed Thomas's motion, arguing that although Thomas utilized Dr. Lamprakos to "determine the causal relationship of [Riley's] new injury," Dr. Malay's medical records established the treatment he provided to Riley "is causally related to the current injury date of June 30, 2015." Riley submitted a letter from Dr. Malay explaining that the treatment to Riley's left foot and ankle was medically necessary.

On July 13, 2016, a workers' compensation judge entered a consent order (the July 2016 order) dismissing Thomas's motion, requiring that Thomas authorize a brace prescribed by Dr. Malay, directing Riley to return to work once the brace was received, and providing as follows: "MMI [maximum medical improvement] to be determined by Dr. Malay. In [the] event Dr. Malay cannot determine MMI and/or report is not received as to MMI, judge can determine prior to next scheduled court date." The order was entered without any proceedings conducted on the record.

The 2017 Motions

Eleven months later, in June 2017, Riley filed a motion for temporary disability benefits from April 19, 2017.[2] Thomas opposed the motion, claiming

---

[2] It appears Thomas had stopped providing temporary disability benefits on April 19, 2017.

Dr. Malay provided inconsistent medical opinions, including opinions regarding Riley's fitness for work, that resulted in Riley receiving treatment for injuries that pre-existed the June 30, 2015 accident. Thomas reprised its assertions, set forth in its answer to the petition, that it provided treatment to Riley without any admission of liability and that Riley's injuries were "causally related to a pre-existing disability resulting from an unrelated motor vehicle accident."

On July 5, 2017, the same workers' compensation judge entered an order stating that Riley's motion "is CLOSED" because Thomas paid temporary disability benefits from April 19, 2017 through June 27, 2017. Again, the order was entered without any proceedings on the record.

The 2018 Motions

On March 30, 2018, Dr. Malay performed a total ankle arthroplasty[3] on Riley's left ankle. The procedure was the fourth surgical procedure Dr. Malay

---

[3] A total ankle arthroplasty is defined as a "total ankle replacement": "An operation for replacement of the ankle joint with artificial parts. The talus (the bone of the ankle that forms a joint with the lower end of the tibia) and the damaged portion of the tibia (the larger of the two bones of the lower leg) are removed and replaced with prosthetic parts." Total Ankle Arthroplasty, Attorneys' Dictionary of Medicine (53rd ed. 2019).

performed on Riley's left ankle following the June 30, 2015 accident.[4]  Thomas's

workers' compensation insurance carrier initially authorized the procedure, as it

had the first three surgeries, but retracted its authorization and did not pay for

the fourth procedure.

On April 12, 2018, Riley filed a motion which, in pertinent part, sought

payment of temporary disability payments and medical treatment, payment for

the March 30, 2018 surgery, and continued treatment with Dr. Malay.[5]  One

week later, Thomas filed a motion requesting dismissal of the petition without

prejudice, asserting Dr. Steven Raikin evaluated Riley on March 14, 2018, and

opined that Riley's surgeries were not causally related to the June 30, 2015

accident.

Riley opposed Thomas's motion, arguing that Thomas made the same

causation argument in its June 2016 motion to dismiss based on Dr. Lamprakos's

reports, and that Thomas's position was rejected by the first workers'

compensation judge in the July 2016 order.  Riley's counsel described an off-

---

[4]  Dr. Malay also performed surgical procedures on July 10, 2015, September 16, 2016 and August 25, 2017.  Thomas provided medical benefits for those procedures.

[5]  The motion also sought enforcement of the June 16, 2016 order, but the record is unclear as to the precise provision of the order Riley sought to enforce.

the-record conference with the first workers' compensation judge, and asserted the judge dismissed Thomas's 2016 motion because Dr. Lamprakos's reports indicated two percent of Riley's disability for the left foot was attributable to the work-related accident. Thus, Riley asserted the issue of causation had already been decided by the first workers' compensation judge and that Thomas improperly sought to relitigate the causation issue.

On June 27, 2018, a second workers' compensation judge entered a consent order (the June 2018 order), signed by the parties' counsel, directing that Thomas "provide physical therapy without prejudice" and "select [an] authorized physician." The order did not address Riley's request for payment for the March 30, 2018 surgery or for his continued treatment by Dr. Malay. Nor did it address Thomas's motion to dismiss the petition. The order was entered without any proceedings on the record.

The 2019 Motions

Six months later, Thomas filed a motion seeking authorization for a medical examination and a "judicial determination . . . that any and all medical treatment in connection with [Riley's] claim should be based upon the . . . medical opinion of Dr. Steven [Raikin,]" whose report stated Riley's claimed injuries were not causally related to the June 30, 2015 work-related accident.

Riley then moved for medical and temporary disability benefits, seeking payment for the March 30, 2018 surgery and authorization for a fifth surgery recommended by Dr. Malay.[6] Thomas opposed Riley's motion, again asserting the March 30, 2018 surgery, and proposed fifth surgery were for injuries not causally related to the work-related accident. Riley submitted January 8, 2019 progress and narrative reports from Dr. Malay, explaining the medical necessity for the past surgeries and prescribed fifth surgery.

The February 13, 2019 Motion Hearing

On February 13, 2019, a third workers' compensation judge held a hearing on the motions. The judge attempted to review the history of the proceeding and the prior orders. The court confirmed with Thomas's counsel that the March 30, 2018 surgery had been initially authorized by Thomas's workers' compensation insurance carrier, but that the carrier subsequently revoked the authorization. Thomas's counsel advised the court that based on Dr. Raikin's report, the March 30, 2018 surgery and fifth surgery prescribed by Dr. Malay were for injuries not causally related to the June 2015 work-related accident, and, for that reason, Thomas denied liability for payment for the surgeries.

---

[6] The prescribed fifth surgery is described as a "revision surgery" related to an Achilles tendon issue resulting from the March 30, 2018 total ankle arthroplasty.

Riley's counsel argued that under the July 2016 order, Dr. Malay was the authorized physician for determining Riley's treatment, and that Dr. Malay determined the March 30, 2018 surgery and the proposed fifth surgery were causally related to the work-related accident and medically necessary.

The judge noted there was confusion over the meaning of the July 2016 and June 2018 orders, the first providing that Dr. Malay would determine MMI and the second authorizing Thomas to designate the authorized physician and allowing Thomas to continue to provide treatment "without prejudice." Thomas argued that it sought the court's approval of Dr. Raikin as the authorized physician.

The judge observed that it was "hard . . . to determine what happened" in connection with the entry of the June 2018 order. The judge said "there was no motion pending" when the June 2018 order was entered, but was informed there was a motion pending at that time. While Thomas's counsel looked for the motion papers to provide the judge, the judge questioned Riley under oath, asking about Riley's injuries, the proposed fifth surgery, and his conversations with Dr. Malay and Dr. Raikin. At the conclusion of the judge's brief questioning, he stated, "[a]t this point I'm just going to limit it to the [c]ourt's questions," and added, "I'll give counsel an opportunity to have more direct and

cross at a later date." Thomas's counsel then confirmed he had located the motion papers that had been presented to the second judge prior to the entry of the June 2018 order, and that they supported a motion to dismiss that included "several requests."

Riley's counsel asserted the June 2018 motion "was just [a] renewal of [the] motion" that was presented in 2016 and resulted in the July 2016 order. Thomas's counsel argued the June 2018 motion addressed the "causal relation of the surgery in March of 2018" and claimed "that's what" the June 2018 order "addressed." The court noted there were no transcripts of the proceedings related to the entry of the orders and observed that the June 2018 order allowing Thomas to designate the authorized physician was "directly opposite" of what the July 2016 order provided—that Dr. Malay would determine MMI. The judge then stated he would "make a reasonable assumption" that the July 2016 order "is still in effect until such point in time . . . that [Dr. Malay] determined MMI or not MMI."[7]

---

[7] Although recognizing the conflict between the orders, the judge did not explain the rationale for his assumption that the first order was "still in effect," or make any findings supporting it. Nor could the court have made any findings supporting the assumption since there were no record proceedings concerning the entry of the orders.

Thomas's counsel explained that he did not have a report from Dr. Raikin concerning the medical necessity for the March 30, 2018 total ankle arthroplasty because Dr. Raikin's March 14, 2018 report was issued prior to the surgery and Dr. Raikin opined Riley did not suffer from any left ankle injuries causally related to the June 30, 2015 accident. Thomas's counsel said he did not have a report from Dr. Raikin in response to Dr. Malay's report supporting the proposed fifth surgery because counsel had "just [received Dr. Malay's report] within the last few days."

Thomas's counsel stated that Thomas challenged only its obligation to pay for the March 30, 2018 surgery and any subsequent surgeries. The court ordered that if Thomas continued its challenge to payment for the March 30, 2018 surgery, it must, within ten days, produce for a hearing the insurance adjuster and her supervisors who authorized, then revoked authorization for, the surgery. The judge also directed that Thomas obtain within ten days a report from Dr. Raikin limited to the medical necessity of the prescribed fifth surgery, and make Dr. Raikin available to testify within ten days. The judge said he would permit Dr. Raikin to testify via Skype or by phone if the attorneys consented. Thomas's counsel said he was uncertain if Dr. Raikin would be available within ten days

11

and requested twenty days to make him available. The judge denied the request because the "case ha[d] been going on for . . . a while."

The judge ordered the continuation of temporary disability benefits and "reserved on the issue of [the July 2016] order." The judge also stated that the July 2016 order "may or may not be inconsistent" with the June 2018 order, and that he would have to "wait and see until [the second judge who entered the June 2018 order] returns from vacation." The judge also said, "[t]roubling in this case . . . is that there were several orders that were entered and there was confusion . . . certainly on [Thomas's] side, as to what those orders actually meant." The court noted Dr. Raikin should be prepared to testify concerning medical causation and the medical necessity for the fifth surgery, and the court would "make the decision ultimately on the causation issue."

The judge ended the hearing by noting that the ten-day requirement he imposed was "tough" and a "difficult thing to do," but he did not want Riley "waiting any longer" because he was "in a lot of pain" and "wants to be relieved of that pain." In response to a question from the judge, Riley said he was "ready" for the prescribed fifth surgery, and the judge stated, "[a]ll right. We're going to give them ten days."

The March 1, 2019 Motion Hearing and Order

Two weeks later, the court held a hearing. By that time, Thomas had authorized payment for the March 30, 2018 surgery. Thus, the only issue before the judge was Thomas's obligation to pay for the proposed fifth surgery. The judge then explained there had been efforts to arrange for Dr. Raikin to testify at the hearing, but Dr. Raikin imposed conditions for his testimony that were unacceptable. More particularly, Dr. Raikin indicated he would testify only after 4:30 p.m., and he would respond only to questioning by the judge. The judge noted that Dr. Raikin's conditions for testifying were not the fault of Thomas's counsel, who acknowledged that he "couldn't even get Dr. Raikin on the phone."

The judge rejected Dr. Raikin's conditions, explaining workers' compensation court proceedings ended at 4:30 p.m. and it would be improper to limit the questioning of Dr. Raikin to only those queries posed by the judge. Riley's counsel objected to permitting Dr. Raikin to testify only in response to the judge's questions. Thomas's counsel explained that he advised Dr. Raikin's administrative assistant of the anticipated and proper mode of questioning, and that the objectionable conditions for the testimony were Dr. Raikin's. The judge noted that Dr. Raikin "should have listened" to Thomas's counsel and found "Dr.

Raikin's idea of participating in the . . . proceedings is not going to control this [c]ourt and, unfortunately, we're not going to be able to take any further testimony."

Thomas's counsel did not argue that the ten-day time limitation the court imposed at the first hearing interfered with Thomas's ability to produce Dr. Raikin or should be extended to permit Dr. Raikin to testify under different, but acceptable, conditions. Nor did counsel request additional time to obtain a different doctor or produce Dr. Raikin under different conditions. Thomas's counsel did not request that he be permitted to question and cross-examine Riley in response to the court's brief questioning of Riley at the first hearing, and counsel did not argue that the judge should not decide whether Thomas should pay for the fifth surgery until after Riley was cross-examined.

The court explained that all of the treatment of Riley's left ankle, including the first four surgeries, were authorized and paid for by Thomas, and the prescribed fifth revision surgery was "more than reasonable under these circumstances." The judge noted that Thomas did not provide any testimony from Dr. Raikin and ordered that Dr. Malay "remain the authorized physician until further order." The court entered an order continuing temporary disability benefits; directing that, in accordance with Thomas's counsel's representation,

14

Thomas pay for the March 30, 2018 surgery; and requiring that Thomas authorize the prescribed fifth "revision surgery on the ankle immediately."  The court did not make any findings or render a decision on Thomas's claim the injuries for which the fifth surgery was prescribed are not causally related to the work-related accident.  This appeal followed.[8]

## II.

Our review of workers' compensation cases is limited.  Hersh v. Cty. of Morris, 217 N.J. 236, 242 (2014).  We must determine "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, . . . with due regard also to the agency's expertise where such expertise is a pertinent factor."  Sager v. O.A. Peterson Constr. Co., 182 N.J. 156, 164 (2004) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)).  We must defer to the factual findings and legal determinations made by the judge of compensation "unless they are 'manifestly unsupported by or inconsistent with competent, relevant and reasonably credible evidence as to offend the interests of justice.'"  Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262 (2003) (quoting Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282 (App. Div. 1994)).  We will "appraise the record as if

---

[8] The third judge denied Thomas's motion for a stay of the order pending appeal.

15

we were deciding the matter at inception and make our own findings and conclusions" only if the judge of compensation "went so wide of the mark that a mistake must have been made[.]" Manzo v. Amalgamated Indus. Union Local 76B, 241 N.J. Super. 604, 609 (App. Div. 1990) (citation omitted). However, we afford no deference to a judge of compensation's interpretation of the law and review legal questions de novo. Renner v. AT&T, 218 N.J. 435, 448 (2014).

Thomas argues the judge erred by not addressing the issue of the causal relationship between Riley's alleged injuries and the work-related accident. Thomas asserts that from the outset of the matter—in its answer to the petition and in the various motions—it reserved its right to authorize treatment without admitting liability. See N.J.S.A. 34:15-15 (providing "[t]he mere furnishing of medical treatment or the payment thereof by the employer shall not be construed to be an admission of liability"). It contends Dr. Lamprakos's 2016 reports and Dr. Raikin's 2018 report provide competent evidence there is no causal relationship between Riley's left ankle injuries, for which the fifth surgery was prescribed, and the work-related accident. Thomas also claims that, despite its authorization of the medical treatment provided by Dr. Malay through the March 30, 2018 surgery, the third judge erred by failing to address or decide the causation issue. Thomas further notes the third judge recognized Thomas raised

the causation issue, but nonetheless stated he "want[ed] to address" only whether Dr. Raikin agreed with Dr. Malay that the fifth surgery was medically necessary.

In part, Thomas's arguments ignore the record. To be sure, Thomas reserved its right to contest its liability throughout the matter, but from the outset it authorized and paid for the treatment Dr. Malay provided without obtaining a determination on the issue of causation. Indeed, although Thomas had Dr. Lamprakos's reports in 2016, it consented to the July 2016 order directing that Dr. Malay determine when Riley attained MMI. In other words, Thomas agreed to allow Dr. Malay to continue to provide medical treatment even though it possessed reports from Dr. Lamprakos stating that any injuries beyond a sprain or strain of Riley's left ankle were not causally related to the June 30, 2015 accident.

In 2018, Thomas again raised the causation issue in response to Riley's motion for payment for the March 30, 2018 surgery and in support of its motion to dismiss the petition with prejudice. But the record does not show the causation issue was decided by the second workers' compensation judge, because the parties entered into the June 2018 consent order that, in relevant part, allowed Thomas to select an authorized physician.

We agree with Thomas that it continually raised the causation issue, and there is no record that either the first or second workers' compensation judge decided the issue on the merits. Thus, we find no basis in the record permitting the conclusion that the July 2016 or June 2018 orders, which neither party appealed, constitute determinations by the workers' compensation court on the causation issue.[9] We appreciate that the July 2016 and June 2018 orders seemingly conflict, with the first suggesting that Dr. Malay is the authorized physician[10] and the second permitting Thomas to appoint an authorized physician, but we need not address the conflict because Thomas's authorization of Dr. Malay's treatment, even through the March 30, 2018 fourth surgery, was

---

[9] We also implore the parties and the workers' compensation court that resolution of dispositive motions by consent order without any proceedings on the record is not an advisable or acceptable practice because, in most instances, it deprives this court of a necessary record upon which to determine what occurred, the meaning of the court's orders and whether issues were addressed, considered or decided in the first instance. See, e.g., Klier v. Sordoni Skanska Constr. Co., 337 N.J. Super. 76, 86 (App. Div. 2001) (explaining that when an important issue is discussed in chambers, "a record must be made or a summary placed on the record as to what transpired in chambers. Only then is effective appellate review insured[]").

[10] As noted by Thomas, the July 2016 order does not expressly designate Dr. Malay as Riley's authorized physician. It instead provides that Dr. Malay will determine Riley's MMI, a role generally filled by an authorized physician, and the record shows Thomas approved and paid for Dr. Malay's treatment for Riley's left ankle and foot from the occurrence of the June 30, 2015 work-related accident through the March 30, 2018 fourth surgery.

without prejudice to its ongoing reservation of its right to contest liability based on the issue of causation.  See N.J.S.A. 34:15-15.

Confronted with the conflicting medical opinions of Dr. Raikin and Dr. Malay concerning the issue of causation, the third workers' compensation judge ordered that Dr. Raikin testify about the medical necessity for the fifth surgery, as well as the issue of causation.  When Dr. Raikin did not make himself available to testify on conditions the judge properly required, the judge expressly determined the medical necessity issue in Riley's favor, did not make any findings on causation, and ordered that Thomas authorize and pay for the fifth surgical procedure.

We find no error in the judge's decision rejecting Dr. Raikin's requirements that he testify after the close of the court day and only in response to the judge's questions.  A contrary conclusion would have denied both parties' due process right to question the witnesses presented.  See Paco v. Am. Leather Mfg. Co., 213 N.J. Super. 90, 95-96 (App. Div. 1986) ("While the technical rules of evidence may be relaxed at workmen's compensation proceedings, they may not be relaxed to the point of infringing on the parties' due process rights or other fundamental rights[,]" including the right of cross-examination).  The court erred, however, by shifting the burden to Thomas to first produce

19

evidence, in the form of Dr. Raikin's testimony, supporting its defense that Riley's injuries were not causally related to the June 30, 2015 accident.

Under the Workers' Compensation Act (the Act), N.J.S.A. 34:15-1 to -146, an employer must furnish an injured worker with medical treatment and services necessary "to cure and relieve the worker of the effects of the injury and to restore the functions of the injured member or organ" if possible. N.J.S.A. 34:15-15. The Act is to be liberally construed in favor of employees. Squeo v. Comfort Control Corp., 99 N.J. 588, 596 (1985).

Although an employer is liable to an employee for disabling injuries sustained "by accident arising out of and in the course of employment," N.J.S.A. 34:15-7, a petitioner for workers' compensation benefits has "the burden of proof to establish all elements of [the] case," Bird v. Somerset Hills Country Club, 309 N.J. Super. 517, 521 (App. Div. 1998). A petitioner is required to prove medical and legal causation. Lindquist, 175 N.J. at 259. "[P]roof of medical causation means proof that the disability was actually caused by the work-related event. Proof of legal causation means proof that the injury is work connected." Ibid. (citations omitted). Where a petitioner proves medical and legal causation, "the burden to defeat [petitioner's] claim and establish contrary

facts and legal conclusions exonerating the employer or mitigating liability shift[s] to the employer." Bird, 309 N.J. Super. at 521 (citation omitted).

Once Thomas raised the causation issue by submitting Dr. Lamprakos's and Dr. Raikin's reports—both of which conflicted with Dr. Malay's reports—the burden fell on Riley to establish causation. Riley's motion for medical benefits for the fifth surgery was required to include evidence that he "is currently temporarily totally disabled and/or in need of current medical treatment." N.J.A.C. 12:235-3.2(a). Under the regulations,

> [a]ffidavits, certifications and medical reports submitted . . . may constitute a prima facie case and may be sufficient basis for the issuance of an order compelling the respondent to provide the relief sought <u>unless respondent files supporting affidavits or certifications to oppose said motion on a legal or factual basis, or files medical reports if there is a medical basis to oppose said motion.</u>
>
> [N.J.A.C. 12:235-3.2(f) (emphasis added).]

We have determined under a similar regulation that "a motion for temporary disability or medical benefits accompanied by supporting documentation can prevail without plenary hearing only if opposing documents are facially insufficient to fairly meet, contradict or oppose the material allegations of the documents in support of the motion." Hogan v. Garden State

21

Sausage Co., 223 N.J. Super. 364, 367 (App. Div. 1988).[11] Where an employee's "documents are not sufficient basis for an order in [his or her] favor" the employee "must produce persuasive live testimony to prevail." Id. at 366.

Here, Thomas reserved its right to contest its liability based on a lack of causation, asserted the lack of causation defense in its opposition to Riley's motion for medical benefits for the fifth surgery, and supported the defense with appropriate physicians' reports. Thus, Dr. Malay's reports supporting a finding of causation were insufficient to support a finding of causation in his favor, and

---

[11] In Hogan, we considered N.J.A.C. 12:235-5.2(e), which, at the time, provided:

> Affidavits, certifications and medical reports in support of the motion shall constitute a prima facie case, and unless rebutted by reports or testimony or affidavits or certifications by the respondent or his attorney setting forth the factual or legal basis of the denial, shall be sufficient basis for the issuance of an order compelling the respondent to provide the relief sought.

> [Id. at 366.]

N.J.A.C. 12:235-5.2(e) was modified in 1991, 23 N.J.R. 2642(a) (Sept. 3, 1991), and again in 1997, 29 N.J.R. 799(a) (Mar. 3, 1997), when it was recodified in subsection (f) of N.J.A.C. 12:235-5.2. As a result of a restructuring of the regulations in 2002, the 1997 version of subsection (f) was recodified in N.J.A.C. 12:235-3.2, again as subsection (f). 34 N.J.R. 3641(d) (Oct. 21, 2002). In all pertinent respects, the language of the regulation has remained unchanged since our decision in Hogan.

it was Riley's burden to establish causation, <u>Bird</u>, 309 N.J. Super. at 521, by producing live testimony, <u>Hogan</u>, 223 N.J. Super. at 366. Nonetheless, the court required that Thomas first produce Dr. Raikin and found that Thomas's failure to present evidence demonstrating a lack of causation required that Thomas authorize and pay for the fifth surgery and continue temporary disability benefits. By doing so, the judge incorrectly relieved Riley of his burden of presenting testimony establishing an essential elements of his claim—medical and legal causation. <u>See</u> <u>Hogan</u>, 223 N.J. Super. at 366.

Moreover, although the judge made no express findings on the issue of causation, by directing that Thomas authorize and pay for the fifth surgery and continue temporary disability benefits, the judge implicitly determined Riley established causation even though the hearing record lacks any competent evidence presented by Riley supporting that finding. <u>Id.</u> at 367. We are therefore constrained to vacate the judge's order and remand for a hearing on the issue of causation[12] at which plaintiff shall have the burden of proving medical

_____

[12] We observe that neither Dr. Lamprakos's nor Dr. Raikin's reports challenged the medical necessity of the proposed fifth surgery, and thus Thomas did not sufficiently challenge Dr. Malay's determination as to medical necessity to require a hearing on that issue. Dr. Lamprakos's and Dr. Raikin's reports challenged Dr. Malay's opinion that further surgeries were required based only on their position that Riley's injuries, for which the surgeries were to be performed, were not causally related to the work-related accident.

and legal causation with respect to the injuries for which the fifth surgery was performed. Lindquist, 175 N.J. at 259.

We offer no opinion on the merits of Riley's causation claim or on Thomas's assertion the injuries are not causally related to the June 30, 2015 accident. We also do not limit on remand the evidence that may be submitted in support of the respective parties' positions or the legal arguments that may be made in support of the parties' positions. In addition, we do not offer any opinion on the meaning, interpretation or import of the prior orders entered in the matter, or whether those orders affect the determination of causation. We note only that any pertinent interpretation of the orders shall not be based on assumptions or off-the-record conversations with the judges who entered them. Resolution of the issues in this case was made difficult before the third judge, and on appeal, by the lack of any record proceedings related to the entry of July 2016 and June 2018 orders. The remand proceeding shall not be infected with the same issues.

Vacated and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION