**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0557-20

YESENIA MORALES,

     Petitioner-Appellant,

v.

ADVANCE AUTO PARTS,

     Respondent-Respondent.

_____

Submitted September 20, 2021 – Decided September 30, 2021

Before Judges Vernoia and Firko.

On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2012-22116.

Yesenia Morales, appellant pro se.

Kent & McBride, PC, attorneys for respondent (Danielle M. Conroy, on the brief).

PER CURIAM

Petitioner Yesenia Morales, who is self-represented, appeals from an August 26, 2020 order for judgment[1] entered by a judge of compensation awarding benefits and finding she sustained a twenty-five percent permanent partial total orthopedic disability resulting from a work-related automobile accident under the New Jersey Workers' Compensation Act (the Act), N.J.S.A. 34:15-1 to -146. We affirm.

The relevant facts were developed at trial through the testimony of petitioner and documents submitted. On September 29, 2011, petitioner was involved in a vehicular accident while driving a company car during the course of her employment as a manager with respondent Advance Auto Parts. She was evaluated at St. Mary's General Hospital and diagnosed with a head contusion and neck and upper back strains. Petitioner underwent a course of conservative treatment, including cervical epidural injections and physical therapy. After conservative treatment failed, petitioner underwent an anterior cervical discectomy and fusion (ACDF) on January 24, 2013, performed by Dr. Carl P. Giordano.

_____

[1] Petitioner incorrectly argues in her brief that respondent Advance Auto Parts was granted summary judgment, which is not the case. The matter was tried; petitioner testified; and the parties stipulated to the admission of their respective expert reports at the hearing. Our opinion focuses on the order for judgment.

Six weeks following the surgery, petitioner returned to work and remained employed by respondent for the next year. She complained of persistent back pain, which limited her ability to operate a vehicle. Dr. Abdallah Taha, a general surgeon, declared petitioner disabled from September 5, 2013, to November 15, 2013, due to her back pain, prompting her to apply for short-term disability benefits. Thereafter, petitioner became self-employed and pursued telephone sales so she could work from home.

At respondent's request, petitioner underwent two independent medical examinations (IME). On November 17, 2014, petitioner was evaluated by Dr. Steven M. Lomazow, a neurologist, who opined she had "an essentially normal objective examination" and "negative EMG[2] of the upper extremities," leading him to conclude "there [was] no basis to assign any neurological permanency in conjunction with this injury." Dr. Lomazow also observed "significant psychiatric functional overlay and histrionic pain behavior."

---

[2] "Electromyography (EMG) measures muscle response or electrical activity in response to a nerve's stimulation of the muscle. The test is used to help detect neuromuscular abnormalities." Electromyography (EMG), JOHNS HOPKINS MEDICINE, https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies%20%20/electromyography-emg#:~:text=Electromyography%20 (EMG)%20measures%%2020muscle%20response,the%20skin%20into%20the %20muscle (last visited September 20, 2021).

A-0557-20

The second IME was performed by Dr. Carl F. Mercurio, an orthopedic surgeon, on April 10, 2015. He opined that petitioner suffered from neck pain and a "[l]umbar herniated disc at L5-S1 to the right." Dr. Mercurio related petitioner's symptoms to the September 29, 2011 car accident, attributing a ten percent permanent partial disability of the cervical spine due to her neck pain, and a five percent permanent partial disability of her lumbar spine to the 2011 accident.

On May 26, 2015, petitioner was involved in a second motor vehicle accident unrelated to her employment, which she claims exacerbated the pain in her cervical and lumbar spines and increased the severity of her headaches. On April 12, 2018, petitioner was examined by her experts, Dr. Vijaykumar Kulkarni, a general surgeon, and Dr. Cheryl Wong, a psychiatrist and neurologist.

Dr. Kulkarni opined petitioner's cervical and lumbar spines were "aggravated by subsequent injury in 2015," and that she sustained a "permanent orthopedic disability of [sixty-percent] of partial total for the cervical spine, plus [forty-percent] of partial total for the lumbar spine." Notably, Dr. Kulkarni was "unable to apportion the disability from each accident."

A-0557-20

Dr. Wong opined petitioner suffered from "[b]ilateral C6 radiculopathy with cutaneous nerve neuropathy . . . as a result of the 2011 accident, C5-[C]6 bulge status post ACDF C5-[C]6, aggravated by subsequent [motor vehicle accident], with permanent neurologic impairment estimated at [twenty-seven-and-one-half percent] of total from all causes"; and (2) "[a]djustment disorder with depressed mood secondary to pain and functional issues related to her cumulative conditions . . . with permanent psychiatric impairment estimated at [twenty-five percent] of total from all causes."

At the February 19, 2020 hearing, petitioner, represented by counsel and with the aid of a Spanish interpreter, testified about her complaints after the first accident in 2011 and after the May 26, 2015 second accident. Petitioner testified that after the 2011 accident and cervical surgery, she could move her neck "not 100 percent but it was like [thirty] percent." Petitioner testified that following the May 2105 accident her back got "worse," the "pain has never gone away," and her headaches persisted to the present day. She testified she is "not able to cook," or "clean the house," "carry heavy objects[] more than seven pounds," or stand for long periods of time. Petitioner testified her life "changed completely." Presently, petitioner receives treatment from a psychologist, a psychiatrist, and

5

a pain management specialist. She has not been involved in any accidents after May 26, 2015.

On March 11, 2020, the parties waived testimony by their experts—Dr. Kulkarni, Dr. Wong, Dr. Lomazow, and Dr. Mercurio—and stipulated their reports into evidence. The judge reserved decision and explained his findings were delayed due to the COVID-19 pandemic and closure of the courts. On August 5, 2020, the judge of compensation rendered a comprehensive oral opinion. He noted petitioner "has difficulty with respect to her credibility," and "inconsistences" noted by Dr. Mercurio led the judge to find petitioner was "exaggerating" some of her complaints.

The judge highlighted that "[u]nfortunately, for the [p]etitioner, she was not examined by physicians on her behalf for purposes of the permanency evaluation until after the 2015 accident." Consequently, Dr. Kulkarni offered an opinion which did not apportion the percentage of disability between the accidents, and Dr. Wong "acknowledge[d] that the subsequent accident exacerbated the earlier conditions and offer[ed] an opinion which is inclusive of, but not apportioned, between the two accidents." The judge emphasized "[t]he only proofs consistent with the legal requirements of objective medical evidence come from . . . [r]espondent." Therefore, petitioner's strained

6

credibility, combined with her lack of expert opinion on the issue of apportionment, "hamper[ed] the [c]ourt's ability" to determine her disability award.

Despite these deficiencies and petitioner not presenting an expert opinion on the percentage allocation of her injuries from each accident, the judge of compensation found petitioner's disability was greater than the percentage suggested by respondent's expert Dr. Mercurio. The judge explained:

> Had the [p]etitioner been examined by a physician selected on her behalf prior to the 2015 accident, the [c]ourt would have expected that their opinions of disability would be higher than those of Drs. Mercurio and Lomazow. Drawing on three decades of experience as a sitting judge of compensation and having handled thousands of similar cases, the [c]ourt makes the determination that the disability with respect to the cervical spine would have been greater than suggested by Dr. Mercurio and, accordingly, finds that disability to be [fifteen] percent. I also determine that the lumbar disability of a lumbar herniated disc at L5-S1 is [ten] percent giving a total partial permanent disability of [twenty-five] percent, orthopedic in nature, . . . . The overall disability of the [p]etitioner is greater due to the subsequent and unrelated accident of 2015.

The order for judgment was entered on August 26, 2020. This appeal followed.

We generally give "substantial deference" to agency determinations. Lindquist v. City of Jersey City Fire Dep't., 175 N.J. 244, 262 (2003) (quoting Earl v. Johnson & Johnson, 158 N.J. 155, 161 (1999)):

> In workers' compensation cases, the scope of appellate review is limited to "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, with due regard to the opportunity of the one who heard the witnesses to judge of their credibility."
>
> [Ibid. (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965))].

We must defer to the workers' compensation judge's factual findings and legal determinations "unless they are 'manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282 (App. Div. 1994)). In that scenario, "the judge of compensation's legal findings are not entitled to any deference and, thus, are reviewed de novo." Hersh v. Cnty. of Morris, 217 N.J. 236, 243 (2014) (citing Williams v. A & L Packing & Storage, 314 N.J. Super. 460, 464 (App. Div. 1998)).

"However, where the focus of the dispute is not on credibility but, rather, alleged error in the trial judge's evaluation of the underlying facts and the

implications to be drawn therefrom[, our] function broadens somewhat." C.B. Snyder Realty, Inc. v. BMW of N. Am. Inc., 233 N.J. Super. 65, 69 (App. Div. 1989). "Where our review of the record 'leaves us with the definite conviction that the judge went so wide of the mark that a mistake must have been made,' we may 'appraise the record as if we were deciding the matter at inception and make our own findings and conclusions.'" Ibid. (quoting Pioneer Nat'l Ins. Co. v. Lucas, 155 N.J. Super. 332, 338 (App. Div. 1978)).

The Act requires employers to compensate employees who are injured in the course of their employment. N.J.S.A. 34:15-1; see also Tlumac v. High Bridge Stone, 187 N.J. 567, 571 (2006). N.J.S.A. 34:15-1 states, in pertinent part:

> When personal injury is caused to an employee by accident arising out of and in the course of his employment, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause, he shall receive compensation therefor from his employer, provided the employee was himself not willfully negligent at the time of receiving such injury.

The Act is remedial legislation designed to be interpreted broadly to provide "coverage to as many workers as possible." Tlumac, 187 N.J. at 571-72 (quoting Brower v. ICT Group, 164 N.J. 367, 373 (2000)). With the

9

exception of a few clearly delineated exclusions stated in N.J.S.A. 34:15-7,[3] "the injured employee is entitled to recover workers' compensation benefits regardless of fault." Ibid.

Based upon our careful review of the record and applicable legal principles, we "conclude that all of the[] factual determinations made by the workers' compensation judge were supported by substantial credible evidence in the record 'and [were] not so wide off the mark as to be manifestly mistaken.'" Acikgoz v. N.J. Tpk. Auth., 398 N.J. Super. 79, 87 (App. Div. 2008) (second alteration in original) (quoting Tlumac, 187 N.J. at 573); see also R. 2:11-3(e)(1)(D). Hence, we affirm substantially for the reasons expressed by the judge of compensation. We add only the following comments.

There is no merit to petitioner's arguments that: (1) the judge did not consider her permanently disabled; (2) her testimony was incorrectly translated; (3) she was disabled from the 2011 accident and 2013 surgery, not the 2015 accident; (4) her attorney did not present all of the proofs relative to her disability; and (5) she has outstanding hospital bills and needs future medical

---

[3] The employer is exempted from providing benefits where the injury or death is self-inflicted, where the employee is intoxicated or under the influence, or where the employee failed to use proper safety equipment, or when the injury is caused by recreational activity not linked to the employee's job duties. N.J.S.A. 34:15-7. None of these exclusions apply in this case.

10

and other treatment. On appeal, petitioner focuses in part on the injuries she suffered in the 2015 accident, which the evidence clearly showed aggravated her injuries from the previous 2011 accident.

A petitioner pursuing a workers' compensation claim bears the burden of proof to establish all elements of the claim. Bird v. Somerset Hills Country Club, 309 N.J. Super. 517, 521 (App. Div. 1998). This includes "prov[ing] both legal and medical causation when those issues are contested." Lindquist, 175 N.J. at 259. Moreover, "[i]t is the petitioner's burden to establish a causal link between the employment and the [injury]," and that "link must be proven by a preponderance of the evidence." Kiczula v. American Nat. Can Co., 310 N.J. Super. 293, 303 (App. Div. 1998) (citations omitted). "Thereafter, the burden to defeat [petitioner]'s claim and establish contrary facts and legal conclusions exonerating the employer or mitigating liability shift[s] to the employer." Bird, 309 N.J. Super. at 521 (citing Gulick v. H.M. Enoch, Inc., 280 N.J. Super. 96, 109 (App. Div. 1995); Pollack v. Pino's Formal Wear & Tailoring, 253 N.J. Super. 397, 410-12 (App. Div. 1992)).

Here, the judge of compensation carefully considered the aggravation of petitioner's injuries from the 2015 accident and correctly made his determination relative to petitioner's claim concerning the 2011 accident based on the extent

A-0557-20

of her disability attributable to the 2011 accident. The judge's decision was based upon substantial credible evidence in the record, and we see no basis to disturb his order for judgment.

For the first time on appeal, petitioner argues the translation of her February 19, 2020 testimony did not conform to her actual testimony, and her attorneys "forced" her to testify in Spanish. She contends that certain discrepancies in her answers to questions posed to her prejudiced the outcome of her case.[4] We disagree.

The role of the interpreter is to be a "conduit from the primary witness to the trier of fact." Biunno, Weissbard and Zegas, Current N.J. Rules of Evidence, cmt. on N.J.R.E. 604 (2021-2022). An interpreter should, "as far as is possible, . . . translate word-for-word exactly what the primary witness has said." State in Int. of R.R., 79 N.J. 97, 117-18 (1979). We recognize that "the use of an interpreter always presents some risk of distortion of the 'message

---

[4] The proposed transcript revisions were not included in either parties' appendices. Rather, petitioner's brief indicates that she submitted an addendum to her case information sheet, which included documents titled: "Judge decision appeal"; "Stenographic transcript correction"; and "Argument and Petition." These documents do not appear on ACME but were included in the hard-copy packet provided by the clerk's office.

communicated by the primary witness.'" Biunno et al., 1991 Supreme Court Committee Comment on N.J.R.E. 604 (quoting R.R., 79 N.J. at 116).

Translators are considered "officers of the court." Code of Professional Conduct for Interpreters, Transliterators, and Translators, Pressler & Verniero, Current N.J. Court Rules, Appendix to Part I at 428 (2021). As such, they are subject to a code of professional conduct that is binding on all persons who translate in connection with "any proceeding before any court of this State." Ibid. The first canon of the code states "translators should maintain high standards of conduct at all times to promote public confidence in the administration of justice." Ibid. The second canon focuses more acutely on the translation itself and dictates that "translators should faithfully and accurately reproduce in the target language the closest natural equivalent of the source-language message without embellishment, omission, or explanation." Ibid. Moreover, Rule 604 provides that "[a]n interpreter shall take an oath or make an affirmation or declaration to interpret accurately." N.J.R.E. 604.

Based upon our careful review of the record, we find the integrity of the interpretation was fulfilled. The interpreter was qualified, and the interrogation ascertained the truth, consistent with the other evidence considered by the judge.

A-0557-20

The record also reflects that the judge of compensation was properly made aware of petitioner's social security award and third-party settlements. The appropriate offsets were made. On the first day of trial, the judge stated, "[a]ll authorized medical bills were paid." No outstanding medical bills were presented.[5] Additionally, this was not a settlement under N.J.S.A. 34:15-20 as petitioner alleges, and therefore, there is no need for us to address her arguments in that regard.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] In her brief, petitioner references a medical bill dated September 17, 2014, which is unrelated to the matter under review. The bill relates to petitioner's emergency room treatment for abdominal, flank, and lower back pain.

A-0557-20